## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF MICHIGAN

JODI TAPPLY, on behalf of herself and
all others similarly situated,

      Plaintiff,

    v.

WHIRLPOOL CORPORATION,

      Defendant.

**JURY TRIAL DEMANDED**

**CLASS ACTION**

## CLASS ACTION COMPLAINT

Plaintiff Jodi Tapply, individually and on behalf of all others similarly situated (the "Class"), through her undersigned counsel, alleges as follows against Defendant Whirlpool Corporation ("Whirlpool").

## INTRODUCTION

1.    Plaintiff and the Class are purchasers of Whirlpool gas ranges, including those sold under the Whirlpool, Maytag, KitchenAid, JennAir, Amana, Roper, Admiral, Affresh, and Gladiator brand names (the "Ranges"), that include dangerous latent defects in the design of their front-mounted burner control knobs that make the Ranges susceptible to unintentional actuation (the "Defect"). The control knobs on the Ranges are prone to, and do, depress and rotate as a result of minor, inadvertent contact. When the knobs on the Ranges are accidentally and inadvertently contacted, Ranges actuate without warning to the consumer.  This unintentional actuation of the Ranges'

1

cooktops in turn creates a hazardous condition and serious risk of fire, property damage, and personal injury.

2.     The defective condition of the Ranges is the result of the low detent (catch that prevents motion until released) force and tiny distance the burner control knobs need to travel to be turned to the "on" position, which is inadequate to prevent unintentional actuation.  In other words, the ease with which the knobs can be pushed in and rotated without resistance fails to prevent the Ranges from being actuated inadvertently.

3.     Further, the control knobs are placed on the Ranges without the necessary guards to prevent such unintentional actuation.

4.     The propensity of the Ranges to be unintentionally actuated—*i.e.*, turned on by accident—creates a significant and largely unappreciated safety risk for Plaintiff and the Class.  This defective condition renders the Ranges hazardous and unsafe for normal and expected use.  The Defect substantially impedes the central function of the Ranges, which serve one purpose: safe cooking.

5.     Since at least 2018, Whirlpool has known that its Ranges were susceptible to unintentional actuation.  Consumers have filed numerous incident reports about the Defect with the U.S. Consumer Product Safety Commission (the "CPSC").  Consumers have also filed complaints with Whirlpool directly via product reviews.

2

6.      Because the existence of the Defect was concealed by Whirlpool, Plaintiff and the Class were deceived and deprived of the benefit of their bargain.  A range that turns on without a consumer's knowledge has no value because it cannot be used safely.  Alternatively, the Ranges have far less value than promised at the point of sale, because a range prone to unintentional actuation, and the attendant risk of harm, is much less valuable than one that operates safely.

7.      The below allegations are based upon personal knowledge as to Plaintiff's conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the Class is a citizen of a state different from that of Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the Class consists of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

9.      The United States District Court for the Western District of Michigan has jurisdiction over Defendant because Defendant resides and transacts business in Michigan, has purposely availed itself of the laws of Michigan, and because many of the specific events giving rise to this action occurred in Michigan.

10.  Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendant has marketed, advertised, and sold the Ranges, and otherwise conducted extensive business, within this District. In addition, Defendant's principal place of business is in Benton Harbor, Michigan.

## PARTIES

11.  Plaintiff Jodi Tapply is a citizen and resident of Jaffrey, New Hampshire.

12.  Whirlpool is a Delaware corporation headquartered in Benton Harbor, Michigan.

13.  Whirlpool markets and distributes major home appliances and small domestic appliances primarily under the Whirlpool, Maytag, KitchenAid, JennAir, Amana, Roper, Admiral, Affresh, and Gladiator brand names.

14.  Whirlpool is and has at all relevant times been in the business of distributing, marketing, promoting, and selling the Ranges described herein throughout the United States and in this jurisdiction. Whirlpool resides in and engages in a continuous course of business in this District and sells thousands of ranges and other consumer goods in this District every year.

15.  Whirlpool is in the business of manufacturing, producing, distributing, and selling consumer appliances, including Ranges, to customers throughout the United States, both directly and through its network of authorized dealers.

4

**ALLEGATIONS SPECIFIC TO PLAINTIFF TAPPLY**

16.    On or about August 5, 2021, Ms. Tapply purchased a new Whirlpool Range Model Number WGG745S0FS02 from Home Depot—an authorized Whirlpool reseller—in Keene, New Hampshire for $1,529.00.

17.    Ms. Tapply reviewed Whirlpool marketing materials, including in-store promotional materials and online advertisements, before she purchased her Range.

18.    Ms. Tapply was aware that her Range was covered by a Whirlpool warranty. The warranty was included in the user manual that came with her Range. The warranty provides that Whirlpool warrants against defects in materials and workmanship for one year.  Absent this warranty, Ms. Tapply would not have purchased her Range.

19.    Ms. Tapply purchased the Range for personal, family, or household use.

20.    Ms. Tapply uses, and at all times has used, her Range in a normal and expected manner.

21.    Ms. Tapply's Range was delivered to her home on or around September 1, 2021.  Shortly thereafter, Ms. Tapply began noticing that her Range would turn on inadvertently and without warning.  Not until Ms. Tapply smelled gas emitting from her Range would she realize that it had been unintentionally actuated.

22.    Ms. Tapply later realized that the Range became inadvertently actuated because its burner control knobs turned to the "on" position with the slightest touch,

5

bump, or brush.  Though she is now more cautious around the Range, it continues to turn on inadvertently at regular intervals.

23.    Before purchasing her Range, Ms. Tapply did not and could not have known that her Range suffered from the Defect.  Had Whirlpool disclosed the Defect prior to her purchase of the Range on the product's packaging, in promotional and marketing materials, in the accompanying print materials, or through some other means, Ms. Tapply would not have purchased the Range or would have paid substantially less.  As a direct result of Whirlpool's conduct, Ms. Tapply has suffered significant economic injury.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

**A.    The Ranges**

24.    The Ranges each have front-mounted knobs that control the cooktop's burners, for example:[1]

---

[1]    https://www.whirlpool.com/kitchen/cooking/ranges/double-oven-freestanding/p.6.0-cu.-ft.-gas-double-oven-range-with-ez-2-lift-hinged-grates.wgg745s0fs.html (Model Number WGG745S0FS, which is the model owned by Plaintiff Tapply).



25.    The models at-issue include, but are not limited to, WGG745S0FS and all models containing substantially similar controls.

26.    The National Home Builders Association states that the useful life of a gas range is 15 to 23 years, with 19 years being the average.[2]  The National Home Builders Association also states that the useful life of an electric range is 13 to 20 years, with 16 years being the average.[3]

**B.    The Defect**

27.    Consumers reasonably expect that the Ranges can only be actuated by intentional and deliberate action. Stated another way, consumers would not anticipate

---

[2]    https://www.mrappliance.com/expert-tips/appliance-life-guide/.

[3]    *Id.*

that inadvertent contact with the Ranges' burner controls—while cooking or performing other activities in its proximity, or by pets or children—will actuate the Range. However, because of the Defect, inadvertent contact with the burner controls may, and has, resulted in unintended actuation of Ranges. Indeed, inadvertent contact with burner controls by pets and children has caused Ranges to actuate and create fires or emit deadly gases.

28. Unfortunately, and unbeknownst to consumers, because of the Defect, each knob actuates the Range through a single smooth motion—a push motion with a twist—requiring minimal force and distance. This design is susceptible to unintentional actuation rendering the Ranges dangerously defective.

29. The process to actuate a Range should be, and is intended to be, the result of two separate and distinct purposeful actions: a first action (pushing the control knob in), followed by a second action (rotating the knob to the desired heating level).

30. The user manual for the model Range purchased by Ms. Tapply, for instance, describes the actuation process as such:

## Electronic Ignition System

### Initial lighting and gas flame adjustments

Cooktop and oven burners use pilotless igniters in place of standing pilots. When the cooktop control knob is turned to the "IGNITE" or "LITE" position system creates a spark to light the burner. This sparking continues, as long as the control knob is turned to "IGNITE" or "LITE".

When the oven control is turned to the desired setting, a glow bar igniter heats and ignites the gas.

### Check Operation of Cooktop Burners
### Standard Surface Burners

Push in and turn each control knob to the "IGNITE" position. The flame should light within 4 seconds. The first time a burner is lit, it may take longer than 4 seconds to light because of air in the gas line.

### If burners do not light properly:

- Turn cooktop control knob to the "OFF" position.
- Check that the range is plugged in and the circuit breaker has not tripped or the household fuse has not blown.
- Check that the gas shutoff valve is set to the "open" position.
- Check that burner caps are properly positioned on burner bases.

Repeat start-up. If a burner does not light at this point, turn the control knobs to "OFF" and contact your dealer or authorized service company for assistance.

31.    However, because of the low detent force and miniscule distance the control knobs need to travel to allow users to turn on their cooktops, the Ranges are often inadvertently actuated by a single continuous motion.

32.    All of the Ranges are also uniformly defective because they all fail to appropriately guard against unintentional actuation.  The design of the Ranges puts no space between the consumer and the hazard.  There are no guards that reduce the risk of unintentional actuation during cleaning or other inadvertent contact made by a user, bystander, child, or pet.

33.    While some of the Ranges may contain an oven handle that could have a guarding effect, its design is wholly insufficient to act as an effective guard or barrier. As an initial matter, the outermost burner control knobs in each of the Ranges protrude

further than the oven handles themselves—therefore eliminating any guarding property they may have. Moreover, any such guarding effect is further blunted by the oven handles' rounded (rather than squared) design, which permits inadvertent contact.

34.    The Defect renders Whirlpool Ranges unusable for their intended central purpose: safe cooking.  Unintentional actuation of the Range burners allows them to reach extreme temperatures, creating a fire danger, and emit toxic fumes.

35.    The Ranges are defective at the point of sale. Consumers could not reasonably know about the Defect at the point of sale and could not discover the Defect with a reasonable investigation at the time of purchase or delivery because a reasonable inspection by a consumer would not reveal whether the materials of the Ranges, the design of the Ranges, and/or the manufacturing processes related to the Ranges render them unsafe for normal and expected use.

**C.    Whirlpool's Knowledge of the Defect**

36.    At all relevant times, Whirlpool knew that the Ranges it marketed and sold were prone to unintentional actuation, and, therefore, that the Ranges were inherently defective, unmerchantable, and unfit for their intended use.

37.    Consumers submitted incident reports about the Defect to the CPSC as early as 2018.  The following is a sample of those complaints, which demonstrate that Whirlpool knew about the Defect by at least 2018. The CPSC transmitted all these complaints to Defendant.

38.    Report sent to Whirlpool on January 1, 2018:[4]

---

**Incident Details**

**Incident Description:** We own a Whirlpool gas range and have noticed on numerous occasions the just lightly bumping the top burner knobs causes them to turn on with out starting the igniters. We could smell gas while standing there. I checked out the knobs and discovered that the positive lock mechanism is extremely weak allowing the knobs to be bumped to a position that allows gas to flow but no ignition. The last time this occurred was this morning at 0755 (Local). I know there have been numerous explosions around the country from unexplained gas leaks. If I was not disabled and home the majority of the time then we could have been a victim of the same issue. This is the second Whirlpool gas range with this issue!

**Incident Date:** 1/1/2018

**Incident Location:** Home/Apartment/Condominium

---

39.    Report sent to Whirlpool on April 21, 2018:[5]

---

**Incident Details**

**Incident Description:** We purchased a Whirlpool double oven Model #WGG745S0FS02 in October. We have a major concern. If the control knobs are slightly bumped they turn on! It DOES NOT click or give any notice that it has been turned on....so gas fills the house, until you smell it!! I have contacted Whirlpool & they suggested to schedule a service call. I went on the website to look at reviews & others have noted this problem. The last time this happened we had 40 guests in our basement & it wasn't until someone went upstairs that we realized 2 burners had been bumped on. This has happened 4 times. This is a huge safety issue and is totally being ignored. Thanks in advance for your help.

**Incident Date:** 4/21/2018

**Incident Location:** Home/Apartment/Condominium

---

40.    Report sent to Whirlpool on April 10, 2019:[6]

---

**Incident Details**

**Incident Description:** Gas range stovetop burner knobs. Just bumping against knob with your body, just reaching for the over the microwave will turn on a burner not every time but it has numerous times. There is a stop in the knob in the off position but it takes very little pressure to turn it on.

**Incident Date:** 4/10/2019

**Incident Location:** Home/Apartment/Condominium

---

41.    Report sent to Whirlpool on November 2, 2019:[7]

---

[4] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1722868

[5] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1759095

[6] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1864762

[7] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1917545

**Incident Details**

**Incident Description:** I am reporting this oven for a 2nd time as nothing has been resolved & the knobs are now extremely easy to turn with a slight bump. I am now wondering how many of the houses you see in the news that blow up spontaneously may be caused by unsafe knobs that are turned on without a click to alert the homeowner gas is leaking. The manufacture has no solutions-no knob covers will work on this style of knob. We are forced to constantly check to make sure the gas is not accidentally turned on...and hope our house doesn't explode. I've copied the previous report in the hope this gets recalled to avoid a future accident. Report #20180507-C40DE-2147388144 5/7/18: We purchased a Whirlpool double oven Model #WGG745S0FS02 in October. We have a major concern. If the control knobs are slightly bumped they turn on! It DOES NOT click or give any notice that it has been turned on....so gas fills the house, until you smell it!! I have contacted Whirlpool & they suggested to schedule a service call. I went on the website to look at reviews & others have noted this problem. The last time this happened we had 40 guests in our basement & it wasn't until someone went upstairs that we realized 2 burners had been bumped on. This has happened 4 times. This is a huge safety issue and is totally being ignored. Thanks in advance for your help.

**Incident Date:** 11/2/2019

**Incident Location:** Home/Apartment/Condominium

---

42.    Consumers have also submitted complaints about the Defect directly to Whirlpool via reviews posted to its website.  A sampling of those complaints is below.[8]



Kahuti · 5 months ago

**I love the small upper oven.**

I am still waiting to resolve the issue of the burners not turning down sufficiently...I can't "simmer" on any burner.
I find the burner knobs to be dangerously placed. I have turned on the gas several times by leaning to turn on the oven. I actually lit the burner once ...while leaning to turn on the oven.

**I received a sweepstakes entry for this review.**  Yes

---

[8] https://www.whirlpool.com/kitchen/cooking/ranges/double-oven-freestanding/p.6.0-cu.-ft.-gas-double-oven-range-with-ez-2-lift-hinged-grates.wgg745s0fs.html .



John Emily · 8 months ago

**its ok**

Our range came in a package deal when we ordered our house. I like having the double ovens and it seems to preheat fast. However, I do not like that the burner knobs do not have a better safety feature on them. I have accidentally bumped them and lit them a couple of times. Also i do not like the timer. It could be a little simpler maybe. I have entered the wrong time several times, meaning to enter minutes not hours. Also, the sound for the timer when it goes off would be better if it went off until you shut it off. We have the microwave above the stove and the light could be much much brighter. Also, we can't figure out how to get the stove to be flush with the wall and cabinet. It sticks out and inch or two and would be much better to be flush, for the light and to set salt and pepper or something on the top of the panel. I haven't used the convection feature in the bottom oven, so i am not sure how that works yet.

**I received a sweepstakes entry for this review.  Yes**

### D.    Whirlpool's Deficient Warranty Service

43.    Whirlpool provided a uniform, express one-year factory warranty against manufacturing defects in materials and workmanship.  Such a warranty was included in the user manual for the model Range purchased by Ms. Tapply:

## WHIRLPOOL® MAJOR APPLIANCE LIMITED WARRANTY

ATTACH YOUR RECEIPT HERE. PROOF OF PURCHASE IS REQUIRED TO OBTAIN WARRANTY SERVICE.
Please have the following information available when you call the Customer eXperience Center:
- Name, address and telephone number
- Model number and serial number
- A clear, detailed description of the problem
- Proof of purchase including dealer or retailer name and address

**IF YOU NEED SERVICE:**

1. Before contacting us to arrange service, please determine whether your product requires repair. Some questions can be addressed without service. Please take a few minutes to review the Troubleshooting or Problem Solver section of the Use and Care Guide, scan the QR code on the right to access additional resources, or visit www.whirlpool.com/product_help.

2. All warranty service is provided exclusively by our authorized Whirlpool Service Providers. In the U.S. and Canada, direct all requests for warranty service to:

**Whirlpool Customer eXperience Center**
**In the U.S.A., call 1-800-253-1301. In Canada, call 1-800-807-6777.**

If outside the 50 United States or Canada, contact your authorized Whirlpool dealer to determine whether another warranty applies.


www.whirlpool.com/product_help

### ONE YEAR LIMITED WARRANTY

| WHAT IS COVERED | WHAT IS NOT COVERED |
|---|---|
| For one year from the date of purchase, when this major appliance is installed, operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation or Whirlpool Canada LP (hereafter "Whirlpool") will pay for Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product. In the event of product replacement, your appliance will be warranted for the remaining term of the original unit's warranty period.<br><br>YOUR SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY SHALL BE PRODUCT REPAIR AS PROVIDED HEREIN. Service must be provided by a Whirlpool designated service company. This limited warranty is valid only in the United States or Canada and applies only when the major appliance is used in the country in which it was purchased. This limited warranty is effective from the date of original consumer purchase. Proof of original purchase date is required to obtain service under this limited warranty. | 1. Commercial, non-residential, multiple-family use, or use inconsistent with published user, operator or installation instructions.<br>2. In-home instruction on how to use your product.<br>3. Service to correct improper product maintenance or installation, installation not in accordance with electrical or plumbing codes or correction of household electrical or plumbing (i.e. house wiring, fuses or water inlet hoses).<br>4. Consumable parts (i.e. light bulbs, batteries, air or water filters, preservation solutions, etc.).<br>5. Defects or damage caused by the use of non-genuine Whirlpool parts or accessories.<br>6. Conversion of products from natural gas or L.P. gas.<br>7. Damage from accident, misuse, abuse, fire, floods, acts of God or use with products not approved by Whirlpool.<br>8. Repairs to parts or systems to correct product damage or defects caused by unauthorized service, alteration or modification of the appliance.<br>9. Cosmetic damage including scratches, dents, chips, and other damage to the appliance finishes unless such damage results from defects in materials and workmanship and is reported to Whirlpool within 30 days.<br>10. Discoloration, rust or oxidation of surfaces resulting from caustic or corrosive environments including but not limited to high salt concentrations, high moisture or humidity or exposure to chemicals.<br>11. Food or medicine loss due to product failure.<br>12. Pick-up or delivery. This product is intended for in-home repair.<br>13. Travel or transportation expenses for service in remote locations where an authorized Whirlpool servicer is not available.<br>14. Removal or reinstallation of inaccessible appliances or built-in fixtures (i.e. trim, decorative panels, flooring, cabinetry, islands, countertops, drywall, etc.) that interfere with servicing, removal or replacement of the product.<br>15. Service or parts for appliances with original model/serial numbers removed, altered or not easily determined.<br><br>**The cost of repair or replacement under these excluded circumstances shall be borne by the customer.** |

### DISCLAIMER OF IMPLIED WARRANTIES

IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW. Some states and provinces do not allow limitations on the duration of implied warranties of merchantability or fitness, so this limitation may not apply to you. This warranty gives you specific legal rights, and you also may have other rights that vary from state to state or province to province.

### DISCLAIMER OF REPRESENTATIONS OUTSIDE OF WARRANTY

Whirlpool makes no representations about the quality, durability, or need for service or repair of this major appliance other than the representations contained in this warranty. If you want a longer or more comprehensive warranty than the limited warranty that comes with this major appliance, you should ask Whirlpool or your retailer about buying an extended warranty.

### LIMITATION OF REMEDIES; EXCLUSION OF INCIDENTAL AND CONSEQUENTIAL DAMAGES

YOUR SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY SHALL BE PRODUCT REPAIR AS PROVIDED HEREIN. WHIRLPOOL SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES. Some states and provinces do not allow the exclusion or limitation of incidental or consequential damages, so these limitations and exclusions may not apply to you. This warranty gives you specific legal rights, and you also may have other rights that vary from state to state or province to province.

11/14

44.    Upon information and belief, Whirlpool routinely denies warranty claims arising from the Defect.

45.    In addition to the express warranty, Whirlpool marketed, advertised, and warranted that the Ranges were of merchantable quality and fit for their intended

purpose. Whirlpool also marketed, advertised, and warranted that the Ranges were free from defects and did not pose an unreasonable risk to persons or property. However, a range that can be actuated unintentionally is not fit for its intended purposes and would not pass without objection in the trade.

46.    Federal law mandates that any manufacturer or seller offering a product to customers, whether directly or indirectly, cannot disclaim implied warranties of merchantability and fitness for a particular purpose where that manufacturer has made an express warranty.

47.    Whirlpool has not implemented an effective remedy for consumers who are at risk because of the Defect.  And despite being made aware of the Defect, Whirlpool has failed to provide effective repairs.

**E.    Injuries and Risk of Imminent Harm to Plaintiff and the Class**

48.    Plaintiff and the other Class purchased their Ranges solely for their personal, residential purposes and only used the Ranges as intended and in accordance with the operating instructions provided by Whirlpool.

49.    In light of the Defect, Plaintiff and other Class Members paid far more than the reasonable value of the Range, and would have paid substantially less, or not have purchased a Range at all, had Whirlpool adequately disclosed the Defect.

50.    Whirlpool has profited and continues to profit from the sale of defective Ranges by failing to disclose the above-described Defect and continuing to sell Ranges at prices well above their reasonable value.

51.    As a direct and proximate result of Whirlpool's false warranties, misrepresentations, and failure to disclose the Defect in these Ranges, Plaintiff and the Class have purchased the Ranges and have suffered injury as a result.

52.    As a direct and proximate result of Whirlpool's concealment of the Defect, its failure to warn its customers of the Defect and the safety risks posed by the Ranges, and its failure to remove the defective Ranges from consumers' homes or otherwise remedy the Defect, Plaintiff and the Class purchased Whirlpool's defective and unsafe Ranges and, in many cases, use them in their homes to this day. Had Plaintiff and the Class known of this serious safety risk, they would not have purchased the Ranges, would have paid substantially less for their Ranges than they paid, and/or would have removed them from their homes as a result of the risk of unintentional actuation.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule

53.    The causes of action alleged accrued upon discovery of the defective nature of the Ranges. Because the Defect is latent, and Whirlpool concealed it, Plaintiff and members of the Class did not discover and could not have discovered the Defect

through reasonable and diligent investigation. Reasonable and diligent investigation did not and could not reveal a factual basis for a cause of action based on Whirlpool's concealment of the Defects.

### B.      Fraudulent Concealment

54.      Any applicable statutes of limitation have been tolled by Whirlpool's knowing, active, and ongoing concealment and denial of the facts as alleged herein.

55.      Whirlpool was and is under a continuous duty to disclose to Plaintiff and the Class the true character, quality and nature of the Ranges, particularly with respect to the serious risks to public safety presented by the Ranges.

56.      At all relevant times, and continuing to this day, Whirlpool knowingly, affirmatively and actively misrepresented and concealed the true character, quality, and nature of the Ranges and sold the Ranges into the stream of commerce as if they were safe for use.

57.      Given Whirlpool's failure to disclose this non-public information, over which Whirlpool had exclusive control, about the defective nature of the Ranges and attendant safety risks—and because Plaintiff and Class Members could not reasonably have known that the Ranges were thereby defective—Plaintiff and Class Members reasonably relied on Whirlpool's assurances of safety. Had Plaintiff and Class Members known that the Ranges pose a safety risk to the public, they would not have purchased the Ranges.

58.    Plaintiff and the Class have been kept ignorant by Whirlpool of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and the Class could not reasonably have discovered the true, latently defective nature of the Ranges.

### C.    Estoppel

59.    Whirlpool was and is under a continuing duty to disclose to Plaintiff and the Class the true character, quality, and nature of the Ranges.  Whirlpool knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Ranges, and the concealment is ongoing.  Whirlpool knew of the Defects and the serious safety risk they posed to consumers and has actively concealed them.  Plaintiff reasonably relied on Whirlpool's assurances of safety. For these reasons, Whirlpool is estopped from relying on any statute of limitations in defense of this action.

60.    Additionally, Whirlpool is estopped from raising any defense of laches due to its own conduct as alleged herein.

### CLASS ACTION ALLEGATIONS

61.    Plaintiff brings this action on her own behalf and on behalf of the following Class and Subclass pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4):

### Nationwide Class

All residents of the United States and its territories who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale.

### New Hampshire Sub-Class

All residents of New Hampshire who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale. This subclass includes any state implied warranty claim that is materially identical to New Hampshire's law of implied warranty, any state express warranty claim that is materially similar to New Hampshire's law of express warranty, and any state consumer fraud claim that is materially similar to New Hampshire's law of consumer fraud.

62.    The Class and the Subclass are referred to collectively as the "Class" for convenience.  Excluded from the Class and Subclass are Whirlpool, its affiliates, employees, officers, and directors; and the Judge(s) assigned to this case.  Plaintiff reserves the right to modify, change, or expand the Class definitions above in response to discovery and/or further investigation.

63.    ***Numerosity***.  Upon information and belief, the class is so numerous that joinder of all members is impracticable.  As of Q1 2019, Whirlpool accounted for 16.3% of the market share in the North American home appliances market.  The Class and Subclass therefore must contain, at the very least, hundreds of members each.

64.    ***Commonality***.  The answers to questions common to the Class will drive the resolution of this litigation. Specifically, resolution of this case will be driven by questions relating to the Ranges' common design, whether the design is defective,

whether the defective design poses a safety risk, Whirlpool's knowledge of the Defect, the uniform diminution in value of the Ranges, and the corresponding unjust enrichment to Whirlpool. The common questions of law and fact include, but are not limited to, the following:

a.    Whether the Ranges pose unreasonable safety risks to consumers;

b.    Whether Whirlpool knew or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

c.    Whether Whirlpool concealed the safety risks its Ranges pose to consumers;

d.    Whether the safety risks the Ranges pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase a range;

e.    Whether the Ranges possess a material Defect;

f.    Whether Whirlpool knew or should have known of the inherent Defect in the Ranges when it placed them into the stream of commerce;

g.    Whether Whirlpool concealed the Defect from consumers;

h.    Whether the existence of the Defect are material facts reasonable purchasers would have considered in deciding whether to purchase a range;

i.    Whether the Ranges are merchantable;

j.    Whether the Ranges are fit for their intended use;

k.    Whether Whirlpool was unjustly enriched by the sale of defective Ranges to the Plaintiff class;

l.  Whether any false warranties, misrepresentations, and material omissions by Whirlpool concerning its defective Ranges caused Class Members' injuries; and

m.  Whether Whirlpool should be enjoined from further sales of the Ranges.

65.  ***Typicality***.  Plaintiff has the same interest as all members of the classes she seeks to represent, and all of Plaintiff's claims arise out of the same set of facts and conduct as all other members of the classes. Plaintiff and all Class Members own or owned a Range designed or manufactured by Whirlpool with the uniform Defect. All the claims of Plaintiff and Class Members arise out of Whirlpool's placement of a product into the marketplace it knew was defective and posed safety risks to consumers, and from Whirlpool's failure to disclose the known safety risks and Defect. Also typical of Plaintiff and Class Members' claims are Whirlpool's conduct in designing, manufacturing, marketing, advertising, warranting, and selling the defective Ranges, Whirlpool's conduct in concealing the Defect in the Ranges, and Plaintiff's and Class members' purchase of the defective Ranges.

66.  ***Adequacy***. Plaintiff will fairly and adequately represent and protect the interest of the Class Members: Plaintiff's interests align with those of the Class Members, and Plaintiff has no fundamental conflicts with the Class. Plaintiff has retained counsel competent and experienced in products liability, consumer protection, and class action litigation, who will fairly and adequately represent the Class.

67.    ***Predominance and Superiority***.  The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class, and a class action is superior to other methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. Whirlpool has acted in a uniform manner with respect to the Plaintiff and Class Members.

68.    Whirlpool is a sophisticated party with substantial resources, while Class Members are not, and prosecution of this litigation is likely to be expensive. Because the economic damages suffered by any individual Class Member may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for Class Members to seek redress individually for Whirlpool's wrongful conduct as alleged herein.

69.    The concealed safety risks described above support swiftly and efficiently managing this case as a class action, which preserves judicial resources and minimizes the possibility of serial or inconsistent adjudications.

70.    Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Whirlpool's unlawful and wrongful conduct. Without a class action, Class Members will continue to suffer the undisclosed risks attendant to the Ranges and incur monetary damages, and Whirlpool's misconduct will continue without remedy. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

22

71.    There will be no undue difficulty in the management of this litigation as a class action.

72.    Alternatively, certification may be appropriate as to individual issues as those issues will raise common questions applicable to all Class Members and materially advance the litigation.

73.    ***Ascertainability***.  The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class. The Class consists of purchasers and owners of certain Ranges, and class membership can be determined using receipts, photographs, ownership documentation, and records in Whirlpool's and other databases.

74.    ***Injunctive and Declaratory Relief***.  Whirlpool has acted and refused to act on grounds that apply generally to the Class, so injunctive and/or declaratory relief is appropriate with respect to the entire Class. Whirlpool made uniform representations and warranties to the Class as a whole, Whirlpool concealed facts from and made material misrepresentations to the Class as a whole, and Whirlpool has destroyed and may still be destroying evidence relevant to the allegations of the Class.

## CLAIMS FOR RELIEF

### Count I
### *Fraud by Omission*
### (On Behalf of the Nationwide Class, or Alternatively,
### the New Hampshire Subclass)

75.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein

76.    Plaintiff brings this claim individually and on behalf of the Nationwide Class or, in the alternative, on behalf of the New Hampshire Subclass under that state's respective laws.

77.    Whirlpool made material omissions concerning a presently existing or past fact in violation of substantially identical common law.  Whirlpool did not fully and truthfully disclose to its customers the true nature of the Defect.  A reasonable consumer would not have expected the Defect in a new range and especially not a Defect that rendered the range unsafe and unusable for ordinary purposes.

78.    Whirlpool omitted to disclose the Defect with the intent that Plaintiff and Class Members rely upon the omission.

79.    The facts concealed, suppressed, and not disclosed by Whirlpool to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Ranges, or to pay a lesser price.

80.    Whirlpool had a duty to disclose the true quality, and safety risks of the Ranges because the knowledge of the Defect and its details were known and/or accessible only to Whirlpool, Whirlpool had superior knowledge and access to the relevant facts, and Whirlpool knew the facts were not known to, or reasonably discoverable by, Plaintiff and Class Members.  Whirlpool also had a duty to disclose because it made many partial representations about the qualities and reliability of its ranges, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual unsafe design of their ranges.

81.    Had Plaintiff and the Class known about the defective nature of the Ranges, they would not have purchased the Ranges or would have paid less.

82.    Plaintiff and Class Members reasonably relied to their detriment upon Whirlpool's material omissions and suffered damages as a result.  Whirlpool's conduct was willful, wanton, oppressive, reprehensible, and malicious.  Consequently, based upon all the facts as alleged herein, Plaintiff and Class Members are entitled to an award of punitive damages.

**Count II**
***Violations of the New Hampshire Consumer Protection Act***
**N.H. Rev. Stat. § 358-A:1 *et seq.***
**(On behalf of the New Hampshire Subclass)**

83.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

84.     Plaintiff Jodi Tapply brings this claim under the laws of New Hampshire, individually and on behalf of the New Hampshire Subclass.

85.     Plaintiff, the New Hampshire Subclass Members, and Defendant are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA") 183. N.H. Rev. Stat. § 358-A:1.

86.     Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

87.     The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but . . . not limited to, the following: . . .  (V) Representing that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have," "(VII) Representing that goods or services are of a particular standard, quality, or grade, . . . if they are of another," and "(IX) Advertising goods or services with intent not to sell them as advertised."  N.H. Rev. Stat. § 358-A:2.

88.     In the course of its business, Whirlpool concealed and suppressed material facts concerning the Ranges. Whirlpool failed to disclose the Defect. Whirlpool also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Ranges.

89.    Whirlpool owed Plaintiff and the New Hampshire Subclass a duty to disclose the true nature of the Ranges because Defendant: (a) possessed exclusive knowledge about the Defect; (b) intentionally concealed the foregoing from Plaintiff and the New Hampshire Subclass; and (c) made incomplete representations about the Ranges, while purposefully withholding material facts from Plaintiff and the New Hampshire Subclass that contradicted these representations.

90.    Whirlpool knew about the Defect at time of sale. Whirlpool acquired additional information concerning the Defect after the Ranges were sold but continued to conceal information.

91.    Whirlpool thus violated the New Hampshire CPA by, at a minimum, employing deception, deceptive acts or practices, fraud, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Ranges.

92.    Whirlpool intentionally and knowingly misrepresented material facts regarding the Ranges with intent mislead Plaintiff and the New Hampshire Subclass members.

93.    Whirlpool knew or should have known that its conduct violated the New Hampshire CPA.

94.    Whirlpool's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff.

95.    Plaintiff and the New Hampshire Subclass suffered ascertainable loss and actual damages as a direct and proximate result of Whirlpool's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the New Hampshire Subclass members who purchased the Ranges would not have purchased them or would have paid significantly less if the Defect had been disclosed.

96.    Whirlpool had an ongoing duty to Plaintiff and the New Hampshire Subclass to refrain from unfair and deceptive practices under the New Hampshire CPA. All owners of the Ranges suffered ascertainable loss in the form of the diminished value of their Ranges as a result of Whirlpool's deceptive and unfair acts and practices made in the course of Whirlpool's business.

97.    Whirlpool's violations present a continuing risk to Plaintiff, the New Hampshire Subclass, and the general public. Whirlpool's unlawful acts and practices complained of herein affect the public interest.

98.    As a direct and proximate result of Whirlpool's violations of the New Hampshire CPA, Plaintiff and the New Hampshire Subclass have suffered injury-in-fact and/or actual damage.

99.    Because Whirlpool's willful conduct caused injury to Plaintiff and the New Hampshire Subclass members' property through violations of the New Hampshire CPA, Plaintiff and the New Hampshire Subclass seek recovery of actual damages, determined by (a) the difference between the values of the Range as represented (their

prices paid) and their actual values at the time of purchase, or (b) the cost to correct the Defect in the Ranges, and (c) other miscellaneous incidental and consequential damages, or $1,000 each, whichever is greater, treble damages, costs, and reasonable attorneys' fees, an order enjoining Whirlpool's unfair and/or deceptive acts and practices, and any other just and proper relief under N.H. Rev. Stat. § 358-A:10.

### Count III
### *Breach of Express Warranty*
### N.H. Rev. Stat. §§ 382-A:2-313 and 382-A:2A-210
### (On Behalf of the New Hampshire Subclass)

100.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

101.   Plaintiff Tapply brings this Count on behalf of herself and the New Hampshire Subclass against Defendant Whirlpool.

102.   Defendant Whirlpool is and was at all relevant times a "merchant" with respect to appliances and goods under N.H. Rev. Stat. § 382-A:2-104(1) and a "seller" of goods under § 382-A:2-103(1)(d).

103.   The Ranges are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1).

104.   In connection with the purchase of each Range, Defendant Whirlpool provides an express warranty ("Warranty"), pursuant to which for a period of one year Whirlpool will pay for Factory Specified Replacement Parts and repair labor to correct

defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product.

105.    1n addition to the written warranties Whirlpool issued, Whirlpool expressly warranted several attributes, characteristics, and qualities, as set forth above.

106.    Furthermore, the Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Tapply and the New Hampshire Subclass members whole and because Defendant Whirlpool has failed and/or refused to adequately provide the promised remedies.

107.    Accordingly, recovery by Plaintiff and the New Hampshire Subclass members is not limited to the warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the New Hampshire Sublass members seek all remedies as allowed by law.

108.    Also, as alleged in more detail herein, at the time that Whirlpool warranted and sold the Ranges, it knew that the Ranges did not conform to the warranties and were inherently defective, and Whirlpool wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Ranges. Plaintiff Tapply and the New Hampshire Subclass members were therefore induced to purchase the Ranges under false and/or fraudulent pretenses.

109.    Moreover, many of the damages flowing from the Ranges cannot be resolved through the limited remedy of "replacement or adjustments," as those

incidental and consequential damages have already been suffered due to Whirlpool's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff Tapply and the New Hampshire Subclass members' remedies would be insufficient.

110.    Whirlpool has been provided notice of these issues by numerous complaints as described herein.

111.    As a direct and proximate result of Whirlpool's breach of express warranties, Plaintiff Tapply and the other New Hampshire Subclass members have been damaged in an amount to be determined at trial.

**Count IV**
***Breach of the Implied Warranty of Merchantability***
**N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212**
**(On behalf of the New Hampshire Subclass)**

112.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

113.    Plaintiff brings this Count on behalf of herself and the New Hampshire Subclass against Defendant.

114.    Defendant is and was at all relevant times a "merchant[]" with respect to appliances under N.H. Rev. Stat. section 382-A:2-104(1) and a "seller[]" of appliances under section 382-A:2-103(1)(d).

115.    The Ranges are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. sections 382-A:2-105(1) and 382-A:2A-103(1)(h).

116.   A warranty that the Ranges were in merchantable condition and fit for the ordinary purpose for which ranges are used is implied by law pursuant to N.H. Rev. Stat. sections 382-A:2-314 and 382-A:2A-212.

117.   These Ranges, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which ranges are used.

118.   Specifically, the Ranges are inherently defective in that they include dangerous latent defects in the design of their front-mounted burner control knobs that make the Ranges susceptible to unintentional actuation.  This unintentional actuation of the Ranges' cooktops in turn creates a hazardous condition and serious risk of fire, property damage, and personal injury.

119.   Defendant was provided notice of these issues by consumer complaints submitted to the CPSC which the CPSC transmitted to Whirlpool, complaints submitted by consumers to the Whirlpool website and to other consumer websites, and complaints filed against it including the instant Complaint, and by communications sent by consumers.

120.   As a direct and proximate result of Whirlpool's breach of the implied warranty of merchantability, Plaintiff Tapply and the other New Hampshire Subclass members have been damaged in an amount to be proven at trial.

**Count V**
***Unjust Enrichment***
**(On Behalf of the Nationwide Class, or in the alternative,**
**on behalf of the New Hampshire Subclass)**

121.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

122.   Plaintiff Jodi Tapply brings this claim on behalf of the Nationwide Class under Michigan law or, in the alternative, on behalf of the New Hampshire Subclass under New Hampshire state law.

123.   Whirlpool received proceeds from its intentional sale of defective Ranges with defective control knobs, which were purchased by Plaintiff and Class Members for an amount far greater than the reasonable value of the defective Ranges.

124.   In exchange for the purchase price paid by Plaintiff and Class Members, Whirlpool provided defective Ranges that are likely to pose a material risk of fire, property damage, and personal injury within their useful lives. This Defect renders the Ranges unfit, and indeed, unsafe for their intended use.

125.   Plaintiff and Class Members reasonably believed that the Ranges would function as advertised and warranted, and did not know, nor could have known, that the Ranges contained Defects at the time of purchase.

126.   Whirlpool received and is aware of the benefit conferred by Plaintiff and Class Members and has retained that benefit despite its knowledge that the benefit is unjust.

127.   Under the circumstances, permitting Whirlpool to retain the proceeds and profits from the sales of the defective Ranges would be unjust. Therefore, Whirlpool should be required to disgorge the unjust enrichment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jodi Tapply, individually and on behalf of the above defined Class, by and through counsel, pray the Court grant the following relief:

A.    An Order certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    An Order appointing Plaintiff Jodi Tapply as representative for the Class and appointing her counsel as lead counsel for the Class;

C.    An order awarding Plaintiff Jodi Tapply and all other Class Members damages in an amount to be determined at trial for the wrongful acts of Whirlpool;

D.    A Declaration that the Ranges are defective and pose a serious safety risk to consumers and the public;

E.    An Order enjoining Whirlpool, its agents, successors, employees, and other representatives from engaging in or continuing to engage in the manufacture, marketing, and sale of the defective Ranges; requiring Whirlpool to issue corrective actions including notification, recall, service bulletins, and fully-covered replacement parts and labor, or replacement of the Ranges; and requiring Whirlpool to preserve all evidence relevant to this lawsuit and notify Range owners with whom it comes in contact of the pendency of this and related litigation;

F.    Nominal damages as authorized by law;

G.    Restitution as authorized by law;

H.    Punitive damages as authorized by law;

I.	Payment to the Class of all damages associated with the replacement of the defective products and parts, in an amount to be proven at trial;

J.	An order awarding attorney's fees pursuant to applicable Federal and State law;

K.	Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

L.	Any and all other and further relief as this Court deems just, equitable, or proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.


Respectfully submitted,

Dated: August 19, 2022	/s/ David H. Fink
	David H. Fink (P28235)
	Nathan J. Fink (P75185)
	FINK BRESSACK
	38500 Woodward Ave, Suite 350
	Bloomfield Hills, MI 48304
	Telephone: (248) 971-2500
	dfink@finkbressack.com
	nfink@finkbressack.com

Alan M. Feldman*
Edward S. Goldis*
Zachary Arbitman*
FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
T: (215) 567-8300
F: (215) 567-8333
afeldman@feldmanshepherd.com
egoldis@feldmanshepherd.com
zarbitman@feldmanshepherd.com

Michael F. Ram*
Marie N. Appel*
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
mram@forthepeople.com
mappel@forthepeople.com

*Attorneys for Plaintiff and the Class*

*\*application for admission forthcoming*