## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF MICHIGAN

JODI TAPPLY, JEANNETTE BUSCHMAN, MICHAEL PARTIPILO, BARBARA LESTER, and VICKI MEYERHOLZ on behalf of themselves and all others similarly situated,

Plaintiff,

v.

WHIRLPOOL CORPORATION,

Defendant.

**Case No. 1:22-cv-758-JMB-RSK**
**Hon. Jane M. Beckering**

**JURY TRIAL DEMANDED**

**CLASS ACTION**

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs Jodi Tapply, Jeannette Buschman, Michael Partipilo, Barbara Lester, and Vicki Meyerholz, individually and on behalf of all others similarly situated (the "Class"), through their undersigned counsel, allege as follows against Defendant Whirlpool Corporation ("Whirlpool").

## INTRODUCTION

1.     Plaintiffs and the Class are purchasers of Whirlpool ranges, including those sold under the Whirlpool, Maytag, KitchenAid, JennAir, Amana, Roper, Admiral, Affresh, and Gladiator brand names (the "Ranges"), that include dangerous latent defects in the design, or in the manufacture, of their front-mounted burner control knobs that make the Ranges susceptible to unintentional actuation (the "Defect"). The control knobs on the Ranges are prone to, and do, rotate as a result of minor, inadvertent

1

contact.  When the knobs on the Ranges are accidentally and inadvertently contacted, the Ranges actuate without warning and cause the ignition of gas Range burners and heating of electric Range cooktops unbeknownst to the consumer.  This unintentional actuation of the Ranges thus creates hazardous conditions—leaking gas or heating electric cooktops to extreme temperatures—and serious risk of fire, property damage, and personal injury.

2.     The Ranges span several model numbers, but they all contain the same defect and are all subject to unintentional actuation.  All of the Ranges, gas and electric, contain the same, or substantially similar, front-mounted burner control knobs which, are identically or similarly designed and, as a result, are prone to, and do, rotate as a results of minor, inadvertent contact causing them to unintentionally actuate.

3.     The defective condition of the Ranges is the result of the low detent (catch that prevents motion until released) force and tiny distance the burner control knobs need to travel to be turned to the "on" position, which is inadequate to prevent unintentional actuation.  In other words, the ease with which the knobs can be pushed in and rotated without resistance fails to prevent the Ranges from being actuated inadvertently.

4.      Further, the control knobs are placed on the Ranges without the necessary guards to prevent such unintentional actuation.

5.     The propensity of the Ranges to be unintentionally actuated—*i.e.*, turned

on by accident—creates a significant and largely unappreciated safety risk for Plaintiffs and the Class.  This defective condition renders the Ranges hazardous and unsafe for normal and expected use.  The Defect substantially impedes the central function of the Ranges, which serve one purpose: safe cooking.

6.     Since at least 2017, Whirlpool has known that its Ranges were susceptible to unintentional actuation.  Consumers have filed numerous incident reports about the Defect with the U.S. Consumer Product Safety Commission (the "CPSC").  Consumers have also filed complaints with Whirlpool directly via online product reviews.

7.     Because the existence of the Defect was concealed by Whirlpool, Plaintiffs and the Class were deceived and deprived of the benefit of their bargain.  A range that turns on without a consumer's knowledge has no value because it cannot be used safely.  Alternatively, the Ranges have far less value than promised at the point of sale, because a range prone to unintentional actuation, and the attendant risk of harm, is less valuable than one that operates safely.

8.     The below allegations are based upon personal knowledge as to Plaintiffs' conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the Class is a citizen of a state different from that of Defendant, (b) the amount in controversy exceeds

$5,000,000, exclusive of interest and costs, (c) the Class consists of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

10.   The United States District Court for the Western District of Michigan has jurisdiction over Defendant because Defendant resides and transacts business in Michigan, has purposely availed itself of the laws of Michigan, and because many of the specific events giving rise to this action occurred in Michigan.

11.   Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendant has marketed, advertised, and sold the Ranges, and otherwise conducted extensive business, within this District. In addition, Defendant's principal place of business is in Benton Harbor, Michigan.

## PARTIES

12.   Plaintiff Jodi Tapply is a citizen and resident of Jaffrey, New Hampshire.

13.   Plaintiff Jeannette Buschman is a citizen and resident of Gore, Oklahoma.

14.   Plaintiff Michael Partipilo is a citizen and resident of Laughlin, Nevada.

15.   Plaintiff Vicki Meyerholz is a citizen and resident of Effingham, Illinois.

16.   Plaintiff Barbara Lester is a citizen and resident of Kentwood, Michigan.

17.   Whirlpool is a Delaware corporation headquartered in Benton Harbor, Michigan.

4

18.     Whirlpool markets and distributes major home appliances and small domestic appliances primarily under the Whirlpool, Maytag, KitchenAid, JennAir, Amana, Roper, Admiral, Affresh, and Gladiator brand names.

19.     Whirlpool is and has at all relevant times been in the business of distributing, marketing, promoting, and selling the Ranges described herein throughout the United States and in this jurisdiction. Whirlpool resides in and engages in a continuous course of business in this District and sells thousands of ranges and other consumer goods in this District every year.

20.     Whirlpool is in the business of manufacturing, producing, distributing, and selling consumer appliances, including Ranges, to customers throughout the United States, both directly and through its network of authorized dealers.

## ALLEGATIONS SPECIFIC TO PLAINTIFFS

### A.     Plaintiff Tapply

21.     On or about August 5, 2021, Ms. Tapply purchased a new Whirlpool Range Model Number WGG745S0FS from Home Depot—an authorized Whirlpool reseller—in Keene, New Hampshire for approximately $1,529.00.

22.     Ms. Tapply reviewed Whirlpool marketing materials before she purchased her Range.

23.     Ms. Tapply was aware that her Range was covered by a Whirlpool warranty. The warranty was included in the user manual that came with her Range.

The warranty provides that Whirlpool warrants against defects in materials and workmanship for one year.  Absent this warranty, Ms. Tapply would not have purchased her Range.

24.     Ms. Tapply purchased the Range for personal, family, or household use.

25.     Ms. Tapply uses, and at all times has used, her Range in a normal and expected manner.

26.     Ms. Tapply's Range was delivered to her home on or around September 1, 2021.  Shortly thereafter, Ms. Tapply began noticing that her Range would turn on inadvertently and without warning.  Not until Ms. Tapply smelled gas emitting from her Range would she become aware that it had been unintentionally actuated.

27.     Ms. Tapply later realized that the Range became inadvertently actuated because its burner control knobs turned to the "on" position with the slightest touch, bump, or brush.  Though she is now more cautious around the Range, it continues to turn on inadvertently at regular intervals.

28.     Before purchasing her Range, Ms. Tapply did not and could not have known that her Range suffered from the Defect.  Had Whirlpool disclosed the Defect prior to her purchase of the Range on the product's packaging, in promotional and marketing materials, in the accompanying print materials, or through some other means, Ms. Tapply would not have purchased the Range or would have paid

substantially less.  As a direct result of Whirlpool's conduct, Ms. Tapply has suffered significant economic injury.

### B.    Plaintiff Buschman

29.    On or about September 11, 2019, Ms. Buschman purchased a new Whirlpool Range Model Number WFG550S0HZ from Lowe's—an authorized Whirlpool reseller—in Muskogee, Oklahoma for approximately $699.00 after discount.

30.    Ms. Buschman reviewed Whirlpool marketing materials before she purchased her Range.

31.    Ms. Buschman was aware that her Range was covered by a Whirlpool warranty. The warranty was included in the user manual that came with her Range. The warranty provides that Whirlpool warrants against defects in materials and workmanship for one year.  Absent this warranty, Ms. Buschman would not have purchased her Range.

32.    Ms. Buschman purchased the Range for personal, family, or household use.

33.    Ms. Buschman uses, and at all times has used, her Range in a normal and expected manner.

34.    Ms. Buschman's Range was installed in or around October 2019 as part of her kitchen refurbishment.

7

35.     Ms. Buschman's husband also installed a microwave above the Range shortly thereafter.  While doing so, Mr. Buschman placed a blanket on top of the Range to protect it.  Unfortunately, however, Mr. Buschman inadvertently actuated the Range when installing the microwave and, after the Range was lit unintentionally, caused that blanket to catch fire.

36.     Ms. Buschman and her husband did not think much of that incident initially but, by around December 2019 or January 2020, Ms. Buschman began to realize that her Range was frequently turning on inadvertently and without warning. Indeed, Ms. Buschman would regularly smell gas emitting from her Range and come to find that it had been unintentionally actuated.

37.      Ms. Buschman later realized that the Range became inadvertently actuated because its burner control knobs turned to the "on" position with the slightest touch, bump, or brush.

38.     After this came to her attention, Ms. Buschman began to be very cautious with and pay particular attention to the Range.  Ms. Buschman anticipates having to pay especially close attention to the Rage if her special needs grandchild were to come over her house to visit.

39.     Despite her vigilance, the Range still regularly actuates unintentionally. On October 12, 2022, for instance, Ms. Buschman's husband was drying his hands and,

without knowing, actuated the Range.  Ms. Buschman and her husband did not realize that the Range had been actuated until they began to smell gas.

40.     Before purchasing her Range, Ms. Buschman did not and could not have known that her Range suffered from the Defect.  Had Whirlpool disclosed the Defect prior to her purchase of the Range on the product's packaging, in promotional and marketing materials, in the accompanying print materials, or through some other means, Ms. Buschman would not have purchased the Range or would have paid substantially less.  As a direct result of Whirlpool's conduct, Ms. Buschman has suffered significant economic injury.

### C.     Plaintiff Partipilo

41.     On or about April 19, 2019, Mr. Partipilo purchased a new-construction home along with several appliances to be installed therein, including a new Whirlpool Range Model Number WGG745S0FS.

42.     Mr. Partipilo was aware that his Range was covered by a Whirlpool warranty. The warranty was included in the user manual that came with his Range. The warranty provides that Whirlpool warrants against defects in materials and workmanship for one year.

43.     Mr. Partipilo purchased the Range for personal, family, or household use.

44.     Mr. Partipilo uses, and at all times has used, his Range in a normal and expected manner.

45.     Mr. Partipilo immediately noticed upon installation that his Range would turn on inadvertently and without warning.  Not until Mr. Partipilo smelled gas emitting from his Range did he become aware that it had been unintentionally actuated.

46.      Mr. Partipilo later realized that the Range became inadvertently actuated because its burner control knobs turned to the "on" position with the slightest touch, bump, or brush.

47.     After this came to his attention, Mr. Partipilo began constantly checking the Range to make sure it was off and occasionally removing the burner control knobs as an additional precaution.

48.     Before purchasing his Range, Mr. Partipilo did not and could not have known that his Range suffered from the Defect.  Had Whirlpool disclosed the Defect prior to his purchase of the Range on the product's packaging, in promotional and marketing materials, in the accompanying print materials, or through some other means, Mr. Partipilo would not have purchased the Range or would have paid substantially less.  As a direct result of Whirlpool's conduct, Mr. Partipilo has suffered significant economic injury.

### D.     Plaintiff Meyerholz

49.     In late 2020, Ms. Meyerholz purchased a new KitchenAid Range Model Number KSDB900ESS from Effingham Appliance—an authorized Whirlpool reseller—in Effingham, Illinois for approximately $2,725.34.

50.     Ms. Meyerholz reviewed Whirlpool marketing materials before she purchased her Range.

51.     Ms. Meyerholz was aware that her Range was covered by a Whirlpool warranty. The warranty was included in the user manual that came with her Range. The warranty provides that Whirlpool warrants against defects in materials and workmanship for one year.  Absent this warranty, Ms. Meyerholz would not have purchased her Range.

52.     Ms. Meyerholz purchased the Range for personal, family, or household use.

53.     Ms. Meyerholz's Range was installed on or around March 22, 2021 by Probst Refrigeration & Heating, Inc.

54.     Ms. Meyerholz uses, and at all times has used, her Range in a normal and expected manner.

55.     Within a week or two after installation, Ms. Meyerholz began noticing that her Range would turn on inadvertently and without warning.  Not until Ms. Meyerholz smelled gas emitting from her Range did she become aware that it had been unintentionally actuated.

56.      Ms. Meyerholz later realized that the Range became inadvertently actuated because its burner control knobs turned to the "on" position with the slightest touch, bump, or brush.  Often when Ms. Meyerholz or her husband try to get items out

11

of cabinet above the Range, the front-mounted burner control knobs are unintentionally actuated and cause the Range to emit dangerous gases. On one occasion, the Range was even lit unintentionally—creating a serious fire hazard.

57.     Before purchasing her Range, Ms. Meyerholz did not and could not have known that her Range suffered from the Defect. Had Whirlpool disclosed the Defect prior to her purchase of the Range on the product's packaging, in promotional and marketing materials, in the accompanying print materials, or through some other means, Ms. Meyerholz would not have purchased the Range or would have paid substantially less. As a direct result of Whirlpool's conduct, Ms. Meyerholz has suffered significant economic injury.

**E.     Plaintiff Lester**

58.     On or about November 25, 2018, Ms. Lester purchased a new Whirlpool Range Model Number WFG320M0BW from Home Depot—an authorized Whirlpool reseller—in Wyoming, Michigan for approximately $519.10.

59.     Ms. Lester reviewed Whirlpool marketing materials before she purchased her Range.

60.     Ms. Lester was aware that her Range was covered by a Whirlpool warranty. The warranty was included in the user manual that came with her Range. The warranty provides that Whirlpool warrants against defects in materials and

workmanship for one year. Absent this warranty, Ms. Lester would not have purchased her Range.

61.     Ms. Lester purchased the Range for personal, family, or household use.

62.     Ms. Lester's Range was installed on or around December 3, 2018.

63.     Ms. Lester uses, and at all times has used, her Range in a normal and expected manner.

64.     Within a few months of being installed, Ms. Lester began noticing that her Range would turn on inadvertently and without warning. Not until Ms. Lester smelled gas emitting from her Range did she become aware that it had been unintentionally actuated.

65.     Ms. Lester later realized that the Range became inadvertently actuated because its burner control knobs turned to the "on" position with the slightest touch, bump, or brush. This happens most when Ms. Lester is cleaning her kitchen or putting items in the cabinet above her Range.

66.     Before purchasing her Range, Ms. Lester did not and could not have known that her Range suffered from the Defect. Had Whirlpool disclosed the Defect prior to her purchase of the Range on the product's packaging, in promotional and marketing materials, in the accompanying print materials, or through some other means, Ms. Lester would not have purchased the Range or would have paid

substantially less.  As a direct result of Whirlpool's conduct, Ms. Lester has suffered

significant economic injury.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

### A.    The Ranges

67.    The Ranges all have front-mounted knobs that control their burners, for

example:[1]

---

[1]  In clockwise/descending order:
https://www.whirlpool.com/kitchen/cooking/ranges/double-oven-freestanding/p.6.0-cu.-ft.-gas-double-oven-range-with-ez-2-lift-hinged-grates.wgg745s0fs.html (Model Number WGG745S0FS, which is the model owned by Plaintiffs Tapply and Partipilo); https://www.appliancesconnection.com/whirlpool-wfg550s0hz.html?gclid=Cj0KCQiA37KbBhDgARIsAIzce174hdOwxJbMh7KNMi3gwUesO6N31llNWLYIHhNzTtBLpe6VP4wuqhsaAqy_EALw_wcB (Model Number WFG550S0HZ, which is the model owned by Plaintiff Buschman); https://www.homedepot.com/p/Whirlpool-5-1-cu-ft-Gas-Range-in-White-WFG320M0BW/205068607?N=5yc1vZc3oy (Model Number WFG320M0BW, which is the model owned by Plaintiff Lester); https://www.kitchenaid.com/major-appliances/ranges/dual-fuel-ranges/p.30-inch-5-burner-dual-fuel-convection-slide-in-range-with-baking-drawer.ksdb900ess.html (Model Number KSDB900ESS, which is the model owned by Plaintiff Meyerholz).







68.    The  models  at-issue  include,  but  are  not  limited  to:  WGG745S0FS,

WFG775H0HV, WFG320M0BW, WFG320M0BW, WFG550S0HZ, WFG525S0JB,

WEG750H0HV,    WFG515S0JW,    MGT8800FZ,    MGR8800FZ,    KSGB900ESS,

KSEG950ESS, KSGG700EBS, KSDB900ESS, KFGD500EBS, KFDD500ESS, and

all other models (discontinued or still available for sale) containing substantially similar front-mounted burner controls.

69.     The National Home Builders Association states that the useful life of a gas range is 15 to 23 years, with 19 years being the average.[2]  The National Home Builders Association also states that the useful life of an electric range is 13 to 20 years, with 16 years being the average.[3]

**B.     The Defect**

70.     Consumers reasonably expect that Ranges can only be actuated by intentional and deliberate action. Stated another way, consumers would not anticipate that inadvertent contact with a Range's burner controls—while cooking or performing other activities in its proximity, or by pets or children—will actuate the Range. However, because of the Defect, inadvertent contact with the burner controls may, and has, resulted in unintended actuation of Ranges.  Indeed, inadvertent contact with burner controls by pets and children has caused Ranges to actuate and create fires and emit deadly gases.

71.     70.     Unfortunately, and unbeknownst to consumers, because of the Defect, each knob actuates the Ranges through a single smooth motion—a push motion with a twist—requiring minimal force and distance.  Plaintiffs allege that this is a defect

---

[2]   https://www.mrappliance.com/expert-tips/appliance-life-guide/.

[3]   *Id.*

in the design, or alternatively, a manufacturing defect wherein the Ranges differ uniformly from the manufacturer's intended result or design.  The Ranges do not conform to industry standards, or to a reasonable consumer's expectation, because the knobs are susceptible to unintentional actuation rendering the Ranges dangerously defective.

72.     The process to actuate a Range should and is intended to be the result of two separate and distinct purposeful actions: a first action (pushing the control knob in), followed by a second action (rotating the knob to the desired heating level).

73.     The user manuals for the Ranges purchased by Plaintiffs describe the process as such:[4]

---

[4]     In the following order from top to bottom: https://www.whirlpool.com/content/dam/global/documents/202203/owners-manual-w11577003-reva.pdf  (User Manual for Model Number WGG745S0FS, which is the model owned by Plaintiffs Tapply and Partipilo); https://www.manua.ls/whirlpool/wfg550s0hz/manual?p=6 (User Manual for Model Number WFG550S0HZ, which is the model owned by Plaintiff Buschman); https://assets.ajmadison.com/ajmadison/itemdocs/WFG320M0B_manual.pdf  (User Manual for Model Number WFG320M0BW, which is the model owned by Plaintiff Lester); https://www.kitchenaid.com/content/dam/global/documents/202104/owners-manual-w11477345-revb.pdf (User Manual for Model Number KSDB900ESS, which is the model owned by Plaintiff Meyerholz).

# Electronic Ignition System

**Initial lighting and gas flame adjustments**

Cooktop and oven burners use pilotless igniters in place of standing pilots. When the cooktop control knob is turned to the "IGNITE" or "LITE" position system creates a spark to light the burner. This sparking continues, as long as the control knob is turned to "IGNITE" or "LITE".

When the oven control is turned to the desired setting, a glow bar igniter heats and ignites the gas.

## Check Operation of Cooktop Burners
**Standard Surface Burners**

Push in and turn each control knob to the "IGNITE" position. The flame should light within 4 seconds. The first time a burner is lit, it may take longer than 4 seconds to light because of air in the gas line.

**If burners do not light properly:**

- Turn cooktop control knob to the "OFF" position.
- Check that the range is plugged in and the circuit breaker has not tripped or the household fuse has not blown.
- Check that the gas shutoff valve is set to the "open" position.
- Check that burner caps are properly positioned on burner bases.

Repeat start-up. If a burner does not light at this point, turn the control knobs to "OFF" and contact your dealer or authorized service company for assistance.

18

# COOKTOP USE



**⚠ WARNING**

**Fire Hazard**

Do not let the burner flame extend beyond the edge of the pan.

Turn off all controls when not cooking.

Failure to follow these instructions can result in death or fire.

 

Electric igniters automatically light the surface burners when control knobs are turned to ⟡ (Ignite).

Before setting a control knob, place filled cookware on the grate. Do not operate a burner using empty cookware or without cookware on the grate.

**To Set:**

1. Push in and turn knob counterclockwise to the Ignite position.

   **IMPORTANT:** All four surface burners will click. Only the burner with the control knob turned to the Ignite position will produce a flame.

2. Turn knob to anywhere between Hi and Lo.

**REMEMBER:** When range is in use or (on some models) during the Self-Cleaning cycle, the entire cooktop area may become hot.

**Power Failure**

In case of prolonged power failure, the surface burners can be lit manually. Hold a lit match near a burner and turn knob counterclockwise to the Ignite position. After the burner lights, turn knob to setting.

## Sealed Surface Burners



| | |
|---|---|
| A. Burner cap | D. Igniter |
| B. Burner base | E. Gas tube opening |
| C. Alignment pins | |

**IMPORTANT:** Do not obstruct the flow of combustion and ventilation air around the burner grate edges.

**Burner cap:** Always keep the burner cap in place when using a surface burner. A clean burner cap will help avoid poor ignition and uneven flames. Always clean the burner cap after a spillover and routinely remove and clean the caps according to the "General Cleaning" section.

**Gas tube opening:** Gas must flow freely throughout the gas tube opening for the burner to light properly. Keep this area free of soil and do not allow spills, food, cleaning agents, or any other material to enter the gas tube opening. Keep spillovers out of the gas tube by always using a burner cap.



A. 1-1½" (2.5-3.8 cm)
B. Burner ports

**Burner ports:** Check burner flames occasionally for proper size and shape as shown in the previous illustration. A good flame is blue in color, not yellow. Keep this area free of soil and do not allow spills, food, cleaning agents, or any other material to enter the burner ports.

19

# COOKTOP USE

## Cooktop Controls



A. Surface burner locator
B. Left rear burner control knob

C. Left front burner control knob
D. Right front burner control knob
E. Right rear burner control knob

## ⚠ WARNING



**Fire Hazard**

Do not let the burner flame extend beyond the edge of the pan.

Turn off all controls when not cooking.

Failure to follow these instructions can result in death or fire.

Electric igniters automatically light the surface burners when control knobs are turned to LITE.

Before setting a control knob, place filled cookware on the grate. Do not operate a burner using empty cookware or without cookware on the grate.

**IMPORTANT:** Do not lift the cooktop on sealed burner models. Lifting the cooktop can lead to damage and improper operation of the range.

**To Set Burner Temperature:**
1. Push in and turn knob counterclockwise to LITE.
   All surface burners will click. Only the burner with the control knob turned to LITE will produce a flame.
2. Turn knob to anywhere between High and Low. The clicking will stop. Use the following chart as a guide when setting heat levels.

| SETTING | RECOMMENDED USE |
|---------|-----------------|
| LITE | ■ Light the burner. |
| High | ■ Start food cooking. |
| | ■ Bring liquid to a boil. |

| SETTING | RECOMMENDED USE |
|---------|-----------------|
| Med (medium) | ■ Hold a rapid boil. |
| | ■ Quickly brown or sear food. |
| | ■ Fry or sauté foods. |
| | ■ Cook soups, sauces and gravies. |
| | ■ Stew or steam foods. |
| Low | ■ Keep food warm. |
| | ■ Simmer (use smallest burners). |

**Power failure**
In case of prolonged power failure, the surface burners can be lit manually. Hold a lit match near a burner and turn knob counterclockwise to LITE. After burner lights, turn knob to setting.

## Surface Burners





A. Burner cap
B. Alignment pins
C. Igniter

D. Burner base
E. Gas tube opening

**IMPORTANT:** Do not obstruct the flow of combustion and ventilation air around the burner grate edges.

**Burner cap:** Always keep the burner cap in place when using a surface burner. A clean burner cap will help avoid poor ignition and uneven flames. Always clean the burner cap after a spillover and routinely remove and clean the caps according to the "General Cleaning" section.

## Electronic Ignition System

### Initial Lighting and Gas Flame Adjustments

Cooktop and oven burners use electronic igniters in place of standing pilots. When the cooktop control knob is turned to the ignite position, the system creates a spark to light the burner. All cooktop burners will spark, but only the burner with the control knob turned to the ignite position will produce a flame. This sparking continues as long as the control knob is turned to the ignite position.

When the oven control is turned to the desired setting, sparking occurs and ignites the gas.

### Check Operation of Cooktop Burners

#### Standard Surface Burners

Push in and turn each control knob to the ignite position.

The flame should light within 4 seconds. The first time a burner is lit, it may take longer than 4 seconds to light because of air in the gas line.

#### If Burners Do Not Light Properly:

- Turn cooktop control knob to the off position.
- Check that the range is plugged into a grounded 3 prong outlet. Check that the circuit breaker has not tripped or the household fuse has not blown.
- Check that the gas shutoff valves are set to the open position.
- Check that burner caps are properly positioned on burner bases.

Repeat start-up. If a burner does not light at this point, turn the control knobs to the off position and contact your dealer or authorized service company for assistance. Please reference the "Warranty" section of the User Guide to contact service.

If the cooktop "low" burner flame needs to be adjusted for any of the burners, see the "Adjust Flame Height" section.

### Power Failure

In case of prolonged power failure, the surface burners can be lit manually. Hold a lit match near a burner, and then turn knob counterclockwise to LITE. After burner lights, turn knob to desired setting.

74.     However, because of the low detent force and miniscule distance the control knobs need to travel to allow users to actuate their Ranges, the Ranges are often inadvertently actuated by a single continuous motion.

75.     All of the Ranges are also uniformly defective because they all fail to appropriately guard against unintentional actuation.  The design of the Ranges puts no space between the consumer and the hazard.  There are no guards that reduce the risk of unintentional actuation during cleaning or other inadvertent contact made by a user, bystander, child, or pet.

21

76.     While some of the Ranges may contain an oven handle that could have a guarding effect, it is wholly insufficient to act as an effective guard or barrier.  As an initial matter, the outermost burner control knobs in each of the Ranges protrude further than the oven handles themselves—therefore eliminating any guarding property they may have. Moreover, any such guarding effect is further blunted by the oven handles' rounded (rather than squared) design, which permits inadvertent contact.

77.     The Defect renders Whirlpool Ranges unusable for their intended central purpose: safe cooking.  Unintentional actuation allows electric cooktops to reach extreme temperatures and gas Ranges to emit toxic fumes; both electric and gas Ranges present a fire risk.

78.     The Ranges are defective at the point of sale. Consumers could not reasonably know about the defect at the point of sale and could not discover the defect with a reasonable investigation at the time of purchase or delivery because a reasonable inspection by a consumer would not reveal whether the materials of the Ranges, the design of the Ranges, and/or the manufacturing processes related to the Ranges render them unsafe for normal and expected use.

## C.     Whirlpool's Knowledge of the Defect

79.     At all relevant times, Whirlpool knew that the Ranges it marketed and sold were prone to unintentional actuation, and, therefore, that the Ranges were inherently defective, unmerchantable, and unfit for their intended use.

22

80.     Consumers have submitted numerous incident reports about the Defect to the U.S. Consumer Product Safety Commission ("CPSC").  The following is a sample of those complaints, which demonstrate that Whirlpool knew about the Defect by at least 2017. The CPSC transmitted all these complaints to Defendants.

81.     Report sent to KitchenAid on January 24, 2017 regarding a Range Model No. KSGB900ESS:[5]

**Incident Details**

**Incident Description:** Four times my wife accidentally turned on a burner on our stove top by leaning against one of the knobs while she cooked or reached up to the microwave. Three times we smelled the gas leaking much later. One time the burner lit. There is no way to lock the knobs, so we have to keep the knobs removed from the stove.

**Incident Date:** 11/3/2016

**Incident Location:** Home/Apartment/Condominium

82.     Report sent to Whirlpool on March 10, 2017 regarding a Range Model No. WGG745S0FS:[6]

**Incident Details**

**Incident Description:** We purchased a new Whirlpool Double Oven Range two weeks ago. Within the first few days we found numerous occasions where the knob on the stove was partially turned to the left letting gas escape into the Kitchen. One evening the smell was very strong when we walked into the kitchen. After several moments we realized that it was coming from the stove. We had to turn on the ceiling fan to help dissipate the fumes. We know that, on some occasions, one of us apparently brushed up against the knob causing it to turn on. We do not know what happened the evening the entire kitchen filled with fumes. This is obviously a defect in the product as we have had a stove in this same position for the past 35 years without a single incident.

**Incident Date:** 2/3/2017

**Incident Location:** Home/Apartment/Condominium

83.     Report sent to Whirlpool on September 8, 2017 regarding Range Model No. KSDG950ESS:[7]

---

[5] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1621781

[6] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1635477

[7] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1690317

**Incident Details**

**Incident Description:** Kitchen Aid downdraft range Model KSDG950ESS, serial number R62616279: The least amount of pressure on the control knobs of this range result in gas being released or the burner igniting. I have made Kitchen Aid aware of this issue. There has been no resolution of the problem. To increase our safety, I have installed child safety knob covers on each of the range knobs. I do not consider this a long term resolution to this safety issue.

**Incident Date:** 9/30/2016

**Incident Location:** Home/Apartment/Condominium

84.     Report sent to Whirlpool on January 1, 2018 regarding Range Model No. WGG745S0FS02:[8]

**Incident Details**

**Incident Description:** We own a Whirlpool gas range and have noticed on numerous occasions the just lightly bumping the top burner knobs causes them to turn on with out starting the igniters. We could smell gas while standing there. I checked out the knobs and discovered that the positive lock mechanism is extremely weak allowing the knobs to be bumped to a position that allows gas to flow but no ignition. The last time this occurred was this morning at 0755 (Local). I know there have been numerous explosions around the country from unexplained gas leaks. If I was not disabled and home the majority of the time then we could have been a victim of the same issue. This is the second Whirlpool gas range with this issue!

**Incident Date:** 1/1/2018

**Incident Location:** Home/Apartment/Condominium

85.     Report sent to Whirlpool on April 21, 2018 regarding Range Model No. WGG745S0FS02:[9]

**Incident Details**

**Incident Description:** We purchased a Whirlpool double oven Model #WGG745S0FS02 in October. We have a major concern. If the control knobs are slightly bumped they turn on! It DOES NOT click or give any notice that it has been turned on....so gas fills the house, until you smell it!! I have contacted Whirlpool & they suggested to schedule a service call. I went on the website to look at reviews & others have noted this problem. The last time this happened we had 40 guests in our basement & it wasn't until someone went upstairs that we realized 2 burners had been bumped on. This has happened 4 times. This is a huge safety issue and is totally being ignored. Thanks in advance for your help.

**Incident Date:** 4/21/2018

**Incident Location:** Home/Apartment/Condominium

86.     Report sent to Whirlpool on April 10, 2019 regarding Range Model No. WGG745S0FS02:[10]

---

[8] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1722868

[9] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1759095

[10] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1864762

**Incident Details**

**Incident Description:** Gas range stovetop burner knobs. Just bumping against knob with your body, just reaching for the over the microwave will turn on a burner not every time but it has numerous times. There is a stop in the knob in the off position but it takes very little pressure to turn it on.

**Incident Date:** 4/10/2019

**Incident Location:** Home/Apartment/Condominium

87.     Report sent to Whirlpool on November 2, 2019 regarding Range Model

No. WGG745S0FS02:[11]

**Incident Details**

**Incident Description:** I am reporting this oven for a 2nd time as nothing has been resolved & the knobs are now extremely easy to turn with a slight bump. I am now wondering how many of the houses you see in the news that blow up spontaneously may be caused by unsafe knobs that are turned on without a click to alert the homeowner gas is leaking. The manufacture has no solutions-no knob covers will work on this style of knob. We are forced to constantly check to make sure the gas is not accidentally turned on...and hope our house doesn't explode. I've copied the previous report in the hope this gets recalled to avoid a future accident. Report #20180507-C40DE-2147388144 5/7/18: We purchased a Whirlpool double oven Model #WGG745S0FS02 in October. We have a major concern. If the control knobs are slightly bumped they turn on! It DOES NOT click or give any notice that it has been turned on....so gas fills the house, until you smell it!! I have contacted Whirlpool & they suggested to schedule a service call. I went on the website to look at reviews & others have noted this problem. The last time this happened we had 40 guests in our basement & it wasn't until someone went upstairs that we realized 2 burners had been bumped on. This has happened 4 times. This is a huge safety issue and is totally being ignored. Thanks in advance for your help.

**Incident Date:** 11/2/2019

**Incident Location:** Home/Apartment/Condominium

88.     Report sent to KitchenAid on February 25, 2020 regarding Range Model

No. KFDD500ESS:[12]

**Incident Details**

**Incident Description:** The burner knobs on my Kitchenaid range turn on too easily Creating a big safety concern leaking gas into the house. The knobs turn with a simple bump. My model number is KFDD500ESS Please look into this ASAP as this could cause injury death or fire

**Incident Date:** 1/29/2020

**Incident Location:** Home/Apartment/Condominium

---

[11] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1917545

[12] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1943956

89.     Consumers have also submitted complaints about the Defect directly to Whirlpool via reviews posted to its website.   The following is a sample of those complaints.

90.     Complaint to Whirlpool 7 months ago regarding a Range Model No. WFG775H0HV:[13]

★★★☆☆

jbean · 7 months ago

**Gas leaking**

I do like my range, it has many excellent qualities but I'm starting to think its dangerous.
I just found a knob turned on, leaking gas for the umpteenth time.
With normal movement around my kitchen I have bumped into the knobs and turned it on just a little. Thank goodness natural gas stinks. I wonder if there could be a fix for this.

91.     Complaint to Whirlpool 7 months ago regarding a Range Model No. WFG320M0BW:[14]

---

[13]https://www.whirlpool.com/kitchen/cooking/ranges/single-oven-freestanding/p.5.8-cu.-ft.-freestanding-gas-range-with-frozen-bake-technology.wfg775h0hv.html?

[14]https://www.whirlpool.com/kitchen/cooking/ranges/single-oven-freestanding/p.whirlpool-5.1-cu.-ft.-freestanding-4-burner-gas-stove.wfg320m0bw.html?



**Father of 3 Toddlers** · 2 years ago

### OK Range, If You Don't Have Young Kids

Operationally, the range works as intended. The main issue is the temperature on the outsides including the door increase to 170+ Degrees. This is well above burn temperatures for toddlers and is very hot to the touch. The flaw is in the design. This model only has 2 panes of glass blocking the heat source from the door. That helps keep the cost down but will burn your kids if they touch the outside of the door or look in the glass to see the cookies baking.

DO NOT RECOMMEND FOR FAMILIES WITH YOUNG CHILDREN.

Another issue is the front knobs are very easy for kids to turn on accidentally. I have to remove the knobs while im not in the kitchen to prevent them from playing with it.

**I received a sweepstakes entry for this review.**  Yes

92.     Complaint to Whirlpool 2 years ago regarding a Range Model No. WFG525S0JB:[15]



**Jrb8** · 2 years ago

### Knobs pose a danger

The stove works fine, but there is an issue with the knobs on the front. When leaning over the stove, for example to clean the microwave above, or to put things away in the cupboard, your body putting pressure on the knobs can (and has) easily turn the gas on without realizing it. Once it even went so far as to turn the flame on, and I was leaning over it. I had an older Whirlpool gas range in the same spot before and I never had this issue.

**I received a sweepstakes entry for this review.**  Yes

93.     Complaint to Whirlpool 2 years ago regarding a Range Model No.

---

[15]https://www.whirlpool.com/kitchen/cooking/ranges/single-oven-freestanding/p.5.0-cu.-ft.-whirlpool-gas-range-with-center-oval-burner.wfg525s0jb.html?

WEG750H0HV:[16]

★☆☆☆☆

Lin560 · 2 years ago

**Do not purchase**

Although I love Whirlpool, this range is flawed. The oven comes one when cleaning. The gas knobs are sensitive and turn on when not expected releasing gas. Dangerous. And now, after just having for less than 5 months, it is not working and I have to have a service call. Very disappointed.

**I received a sweepstakes entry for this review.** Yes

94.     Complaint to Whirlpool 2 years ago regarding a Range Model No.

WFG515S0JW:[17]

★★☆☆☆

**Ms. Kat** · 2 years ago

**Disappointed.**

This is a gas range and the knobs "do not" have a secure shut "off" position. You do not have to push the knob in to turn the range on or even a click to listen for to turn the range on. I sure am glad I don't have children because they could turn the gas on and you would not know it until you smelled gas. I turned it on while cleaning it and did not realize what I had done until I smelled gas.

**I received a sweepstakes entry for this review.** Yes

95.     Complaint to Maytag 4 years ago regarding Range Model No.

---

[16] https://www.whirlpool.com/kitchen/cooking/ranges/slide-in/p.5.8-cu.-ft.-smart-slide-in-gas-range-with-ez-2-lift-hinged-cast-iron-grates.weg750h0hv.html

[17] https://www.whirlpool.com/kitchen/cooking/ranges/single-oven-freestanding/p.5.0-cu.-ft.-whirlpool-gas-range-with-speedheat-burner.wfg515s0jw.html

MGT8800FZ:[18]



**DANGEROUS GAS CONTROL DESIGN**

I have an older model of this series and on mine it is possible to have gas flowing on the cooktop BEFORE the igniter comes on. Found this out when someone accidentally must have bumped the knob and we noticed a strong gas odor in the room. Hopefully they have re-engineered the gas controls.

96.    Complaint to Maytag 6 months ago regarding Range Model No. MGR8800FZ:[19]



**MOST DANGEROUS STOVE I HAVE OWNED**

You can accidently brush against the front of the stove and the knobs turn, allowing gas to flow without igniting! This has happened a number of times. This is the first time I have ever had a stove with this problem. I'm afraid one day I won't catch it until the darn thing blows up the house.

I received a sweepstakes entry for this review.   Yes

97.    Complaint to KitchenAid 4 years ago regarding Range Model No. KSGG700EBS:[20]

---

[18]https://www.maytag.com/kitchen/ranges/double-oven-freestanding/p.30-inch-wide-double-oven-gas-range-with-true-convection-6.0-cu.-ft.mgt8800fz.html

[19] https://www.maytag.com/kitchen/ranges/single-oven-freestanding/p.30-inch-wide-gas-range-with-true-convection-and-power-preheat-5.8-cu.-ft.mgr8800fz.html?

[20]  https://www.kitchenaid.com/major-appliances/black-stainless/ranges/p.30-inch-5-burner-gas-slide-in-convection-range.ksgg700ebs.html#pdp-accordion-reviews



**dexter89** · 4 years ago

**Dangerous!**

Knobs can be easily turned without noticing, leaking gas into the area without ignition.
Additionally, I'm unable to find a 3rd party manufacturer with knob covers that are compatible
with this model due the the bezel around each knob.

98.　　Complaint to KitchenAid 4 years ago regarding a Range Model No.

KSDB900ESS:[21]



**gail0671** · 4 years ago

**Very dangerous appliance!**

We have owned this stove for over 3 years and thought we could overcome its major
shortcoming--knobs so easily turned that a slight brush against them turns on the gas well
before the ignition click. It was when our explosive gas alarm sounded that we knew we could no
longer cope with the problem. If we had not been at home, our house would have exploded. I
was told by KitchenAid that the stove was designed specifically for handicapped use. Why
wasn't I told this at purchase? I was also told that mine was a "use and care" problem, not one of
design. The finish is so delicate that it scratches with a fingernail. Such a disappointment.

99.　　Complaint to KitchenAid 3 years ago regarding a Range Model No.

KSEG950ESS:[22]

---

[21]　https://www.kitchenaid.com/major-appliances/ranges/dual-fuel-ranges/p.30-inch-
5-burner-dual-fuel-convection-slide-in-range-with-baking-
drawer.ksdb900ess.html#pdp-accordion-reviews

[22]　https://www.kitchenaid.com/major-appliances/ranges/slide-in-ranges/p.30-inch-4-
element-electric-downdraft-slide-in-range.kseg950ess.html?



**Pam in VT** · 3 years ago

**Dangerous appliance. Do not buy!**

The knobs on this appliance turns easily and have about a 1" play before the starter kicks in. I have found them inadvertently turned on with gas filling the house several times. KitchenAid is aware and says it is due to care and use and recommends i get knob covers. It is a flawed design. Also the cat walks on the panel and turns things on and off. Downdrafts doesn't work well either. I have had several KitchenAid appliances over the years and am disappointed they will not help me.

100.   Complaint to KitchenAid 1 year ago regarding a Range Model No. KFGD500EBS:[23]



**Anna57** · a year ago

**Dangerous**

The front knobs stick out too far and are very easy to turn by just brushing against them causing a gas smell. It's dangerous, especially if there's kids around. And to clean the top you have to take the 2 huge grates off. Plus the lower oven stopped working after one use and I had to have the igniter replaced.

**I received a sweepstakes entry for this review.**  Yes

101.   In addition, as explained above, certified Whirlpool appliance technicians have observed unintentional actuation in Ranges in the field.

**D.     Whirlpool's Deficient Warranty Service**

---

[23] https://www.kitchenaid.com/major-appliances/ranges/gas-ranges/gas-double-oven-range/p.30-inch-5-burner-gas-double-oven-convection-range.kfgd500ebs.html?

102.    Whirlpool provided a uniform, express one-year factory warranty against manufacturing defects in materials and workmanship.  Such a warranty was included in the user manual for the model Range purchased by Plaintiffs.

103.    As explained above, Whirlpool routinely denies warranty claims arising from the Defect.

104.    In addition to the express warranty, Whirlpool marketed, advertised, and warranted that the Ranges were of merchantable quality and fit for their intended purpose. Whirlpool also marketed, advertised, and warranted that the Ranges were free from defects and did not pose an unreasonable risk to persons or property. However, a range that can be actuated unintentionally is not fit for its intended purposes and would not pass without objection in the trade.

105.    Federal law mandates that any manufacturer or seller offering a product to customers, whether directly or indirectly, cannot disclaim implied warranties of merchantability and fitness for a particular purpose where that manufacturer has made an express warranty.

106.    Whirlpool has not implemented an effective remedy for consumers who are at risk because of the Defect.  And despite being made aware of the Defect, Whirlpool has failed to provide effective repairs.

### E.    Injuries and Risk of Imminent Harm to Plaintiffs and the Class

107.    Plaintiffs and the other Class purchased their Ranges solely for their

personal, residential purposes and only used the Ranges as intended and in accordance with the operating instructions provided by Whirlpool.

108.   In light of the Defect, Plaintiffs and other Class Members paid far more than the reasonable value of the Range, and would have paid substantially less, or not have purchased a Range at all, had Whirlpool adequately disclosed the Defect.

109.   Whirlpool has profited and continues to profit from the sale of defective Ranges by failing to disclose the above-described Defect and continuing to sell Ranges at prices well above their reasonable value.

110.   As a direct and proximate result of Whirlpool's false warranties, misrepresentations, and failure to disclose the Defect in these Ranges, Plaintiffs and the Class have purchased the Ranges and have suffered injury as a result.

111.   As a direct and proximate result of Whirlpool's concealment of the Defect, its failure to warn its customers of the Defect and the safety risks posed by the Ranges, and its failure to remove the defective Ranges from consumers' homes or otherwise remedy the Defect, Plaintiffs and the Class purchased Whirlpool's defective and unsafe Ranges and, in many cases, use them in their homes to this day. Had Plaintiffs and the Class known of this serious safety risk, they would not have purchased the Ranges, would have paid substantially less for their Ranges than they paid, and/or would have removed them from their homes as a result of the risk of unintentional actuation.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A. Discovery Rule

112. The causes of action alleged accrued upon discovery of the defective nature of the Ranges. Because the Defect is latent, and Whirlpool concealed it, Plaintiffs and members of the Class did not discover and could not have discovered the Defect through reasonable and diligent investigation. Reasonable and diligent investigation did not and could not reveal a factual basis for a cause of action based on Whirlpool's concealment of the Defects.

### B. Fraudulent Concealment

113. Any applicable statutes of limitation have been tolled by Whirlpool's knowing, active, and ongoing concealment and denial of the facts as alleged herein.

114. Whirlpool was and is under a continuous duty to disclose to Plaintiffs and the Class the true character, quality and nature of the Ranges, particularly with respect to the serious risks to public safety presented by the Ranges.

115. At all relevant times, and continuing to this day, Whirlpool knowingly, affirmatively and actively misrepresented and concealed the true character, quality, and nature of the Ranges and sold the Ranges into the stream of commerce as if they were safe for use.

116. Given Whirlpool's failure to disclose this non-public information, over which Whirlpool had exclusive control, about the defective nature of the Ranges and

attendant safety risks—and because Plaintiffs and Class Members could not reasonably have known that the Ranges were thereby defective—Plaintiffs and Class Members reasonably relied on Whirlpool's assurances of safety. Had Plaintiffs and class members known that the Ranges pose a safety risk to the public, they would not have purchased the Ranges.

117.   Plaintiffs and the Class have been kept ignorant by Whirlpool of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs and the Class could not reasonably have discovered the true, latently defective nature of the Ranges.

### C.    Estoppel

118.   Whirlpool was and is under a continuing duty to disclose to Plaintiffs and the Class the true character, quality, and nature of the Ranges.  Whirlpool knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Ranges, and the concealment is ongoing.  Whirlpool knew of the Defects and the serious safety risk they posed to consumers and has actively concealed them.  Plaintiffs reasonably relied on Whirlpool's assurances of safety. For these reasons, Whirlpool is estopped from relying on any statute of limitations in defense of this action.

119.   Additionally, Whirlpool is estopped from raising any defense of laches due to its own conduct as alleged herein.

## CLASS ACTION ALLEGATIONS

120.   Plaintiffs bring this action on their own behalf and on behalf of the following Classes and Subclasses pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4):

### Nationwide Gas Class

All residents of the United States and its territories who purchased a new gas Range or otherwise acquired a gas Range, primarily for household use and not for resale.

### Nationwide Electric Class

All residents of the United States and its territories who purchased a new electric Range or otherwise acquired an electric Range, primarily for household use and not for resale.

### New Hampshire Gas Sub-Class

All residents of New Hampshire who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale. This subclass includes any state implied warranty claim that is materially identical to New Hampshire's law of implied warranty, any state express warranty claim that is materially similar to New Hampshire's law of express warranty, and any state consumer fraud claim that is materially similar to New Hampshire's law of consumer fraud.

### Oklahoma Gas Sub-Class

All residents of Oklahoma who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale. This subclass includes any state implied warranty claim that is materially identical to Oklahoma's law of implied warranty, any state express warranty claim that is materially similar to Oklahoma's law of express warranty, and any state consumer fraud claim that is materially similar to Oklahoma's law of consumer fraud.

### Nevada Gas Sub-Class

All residents of Nevada who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale. This subclass includes any state implied warranty claim that is materially identical to Nevada's law of implied warranty, any state express warranty claim that is materially similar to Nevada's law of express warranty, and any state consumer fraud claim that is materially similar to Nevada's law of consumer fraud.

### Illinois Gas Sub-Class

All residents of Illinois who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale. This subclass includes any state implied warranty claim that is materially identical to Illinois's law of implied warranty, any state express warranty claim that is materially similar to Illinois's law of express warranty, and any state consumer fraud claim that is materially similar to Illinois's law of consumer fraud.

### Michigan Gas Sub-Class

All residents of Michigan who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale. This subclass includes any state implied warranty claim that is materially identical to Michigan's law of implied warranty, any state express warranty claim that is materially similar to Michigan's law of express warranty, and any state consumer fraud claim that is materially similar to Michigan's law of consumer fraud.

121.   The Class and the Subclasses are referred to collectively as the "Class" for convenience.  Excluded from the Class and Subclasses are Whirlpool, its affiliates, employees, officers, and directors; and the Judge(s) assigned to this case.  Plaintiffs reserve the right to modify, change, or expand the Class definitions above in response to discovery and/or further investigation.

122.   *Numerosity*.  Upon information and belief, the class is so numerous that joinder of all members is impracticable.  As of Q1 2019, Whirlpool accounted for 16.3% of the market share in the North American home appliances market.  The Class and Subclass therefore must contain, at the very least, hundreds of members each.

123.   *Commonality*.  The answers to questions common to the Class will drive the resolution of this litigation. Specifically, resolution of this case will be driven by questions relating to the Ranges' common design, whether the design is defective, whether the defective design poses a safety risk, Whirlpool's knowledge of the Defect, the uniform diminution in value of the Ranges, and the corresponding unjust enrichment to Whirlpool. The common questions of law and fact include, but are not limited to, the following:

a.   Whether the Ranges pose unreasonable safety risks to consumers;

b.   Whether Whirlpool knew or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

c.   Whether Whirlpool concealed the safety risks its Ranges pose to consumers;

d.   Whether the safety risks the Ranges pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase an electric range;

e.   Whether the Ranges possess material Defects;

f.   Whether Whirlpool knew or should have known of the inherent Defects in the Ranges when it placed them into the stream of commerce;

g.   Whether Whirlpool concealed the Defects from consumers;

h.   Whether the existence of the Defects are material facts reasonable purchasers would have considered in deciding whether to purchase a range;

i.   Whether the Ranges are merchantable;

j.   Whether the Ranges are fit for their intended use;

k.   Whether Whirlpool was unjustly enriched by the sale of defective Ranges to the Plaintiff class;

l.   whether any false warranties, misrepresentations, and material omissions by Whirlpool concerning its defective Ranges caused Class Members' injuries; and

m.   whether Whirlpool should be enjoined from further sales of the Ranges.

124.   ***Typicality***.  Plaintiffs have the same interest as all members of the classes they seek to represent, and all of Plaintiffs' claims arise out of the same set of facts and conduct as all other members of the classes. Plaintiffs and all class members own or owned a Range designed or manufactured by Whirlpool with uniform Defects. All the claims of Plaintiffs and Class Members arise out of Whirlpool's placement of a product into the marketplace it knew was defective and posed safety risks to consumers, and from Whirlpool's failure to disclose the known safety risks and Defects. Also typical of Plaintiffs and Class members' claims are Whirlpool's conduct in designing, manufacturing, marketing, advertising, warranting, and selling the defective Ranges, Whirlpool's conduct in concealing the Defects in the Ranges, and Plaintiffs' and Class members' purchase of the defective Ranges.

125.   *Adequacy*. Plaintiffs will fairly and adequately represent and protect the interest of the Class Members: Plaintiffs' interests align with those of the Class Members, and Plaintiffs have no fundamental conflicts with the Class. Plaintiffs have retained counsel competent and experienced in products liability, consumer protection, and class action litigation, who will fairly and adequately represent the Class.

126.   *Predominance and Superiority*.  The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class, and a class action is superior to other methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. Whirlpool has acted in a uniform manner with respect to the Plaintiffs and Class Members.

127.   Whirlpool is a sophisticated party with substantial resources, while Class Members are not, and prosecution of this litigation is likely to be expensive. Because the economic damages suffered by any individual Class Member may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for Class Members to seek redress individually for Whirlpool's wrongful conduct as alleged herein.

128.   The concealed safety risks described above support swiftly and efficiently managing this case as a class action, which preserves judicial resources and minimizes the possibility of serial or inconsistent adjudications.

129.   Plaintiffs and Class Members have all suffered and will continue to suffer

harm and damages as a result of Whirlpool's unlawful and wrongful conduct. Without a class action, Class Members will continue to suffer the undisclosed risks attendant to the Ranges and incur monetary damages, and Whirlpool's misconduct will continue without remedy. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

130.   There will be no undue difficulty in the management of this litigation as a class action.

131.   Alternatively, certification may be appropriate as to individual issues as those issues will raise common questions applicable to all class members and materially advance the litigation.

132.   *Ascertainability*.  The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class. The Class consists of purchasers and owners of certain Ranges, and class membership can be determined using receipts, photographs, ownership documentation, and records in Whirlpool's and other databases.

133.   *Injunctive and Declaratory Relief*.  Whirlpool has acted and refused to act on grounds that apply generally to the Class, so injunctive and/or declaratory relief is appropriate with respect to the entire Class. Whirlpool made uniform representations and warranties to the Class as a whole, Whirlpool concealed facts from and made

material misrepresentations to the Class as a whole, and Whirlpool has destroyed and may still be destroying evidence relevant to the allegations of the Class.

## CLAIMS FOR RELIEF

### Count I
### *Magnuson-Moss Warranty Act*
### **(15 U.S.C. § 2301)**
### **(On behalf of the Nationwide Classes)**

134.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

135.   Plaintiffs bring this claim individually and on behalf of the Nationwide Classes.

136.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

137.    Whirlpool is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

138.   The Ranges are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

139.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

140.   Whirlpool's implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

141.    Whirlpool's express warranty is a "written warranty" within the meaning

of 15 U.S.C. § 2301(6).

142.   Whirlpool breached the implied warranty and the express warranty by virtue of the above-described acts.

143.   Plaintiffs and the other Class Members notified Whirlpool of the breach within a reasonable time and/or were not required to do so. Whirlpool was also on notice of the Defect from, among other sources, the complaints and service requests it received from Class Members and its resellers.

144.   Whirlpool's breach of the implied warranty and express warranty deprived Plaintiffs and Class Members of the benefits of their bargains.

145.   Plaintiffs and the Class Members have had sufficient direct dealings with either Whirlpool or its agents (resellers and technical support) to establish privity of contract between Whirlpool, on one hand, and Plaintiffs and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between Whirlpool and its resellers, and specifically, of Whirlpool's implied warranties. The distributors were not intended to be the ultimate consumers of the Ranges and have no rights under the warranty agreements provided with the Ranges; the warranty agreements were designed for and intended to benefit the consumer only.

146.   Whirlpool breached these warranties, as described in more detail above and below. Without limitation, the Ranges contain a Defect that puts Class Members

safety in jeopardy. The Class Ranges share a common defect in that they are manufactured with defective materials and/or with poor workmanship. Contrary to Whirlpool's representations about its Ranges, the Ranges are defective in manufacture, materials and/or workmanship and are unsafe. The Ranges share a common defect that causes unintentional actuation. The resulting failures and manifestations of the defect are occurring within the warranty terms and period.

147.  Affording Whirlpool a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, Whirlpool has long been on notice of the claims of Plaintiffs and Class members and has refused to provide a remedy, instead placing the blame on customers or refusing to acknowledge the existence of the defect.

148.  At the time of sale of each of the Ranges, Whirlpool knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Ranges' Defect and inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Whirlpool a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

149.  Plaintiffs and Class Members would suffer economic hardship if they

returned their Ranges but did not receive the return of all payments made by them. Because Whirlpool is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their Ranges by retaining them.

150.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

151.   Plaintiffs, individually and on behalf of all Class Members, seek all damages permitted by law, in an amount to be proven at trial.

**Count II**
***Violations of the Michigan Consumer Protection Act (MCPA),***
**Mich. Comp. Laws Ann. §445.901, et seq.**
**(On behalf of the Nationwide Classes or, in the Alternative,**
**the Michigan Subclass)**

152.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

153.   Plaintiffs bring this claim under the laws of Michigan, individually and on behalf of the Michigan Subclass.

154.   The Michigan Consumer Protection Act was created to protect Michigan consumers from deceptive and unfair business practices.

155.   Whirlpool's conduct described herein constitutes the act, use or

employment of deception, false promise, misrepresentation, unfair practice and the concealment, suppression and omission of material facts in connection with the sale and advertisement of merchandise, the Ranges, in trade or commerce in Michigan, made with the intention that Plaintiffs and members of the Nationwide and Michigan Classes would rely upon such conduct in purchasing the Ranges, making it unlawful under Mich. Comp. Law Ann. §445.901, *et seq*.

156.   Plaintiffs and the Class members relied upon the material representations made by Whirlpool and purchased the Ranges for personal purposes and suffered ascertainable losses of money or property as the result of the use or employment of a method, act or practice declared unlawful by Mich. Comp. Law Ann. §445.901, *et seq*.

157.   Plaintiffs and the Class Members acted as reasonable consumers would have acted under the circumstances, and Whirlpool's unlawful conduct would cause reasonable persons to enter into the transactions (purchasing the Ranges) that resulted in the damages. Accordingly, pursuant to Mich. Comp. Law Ann. §445.901, *et seq.*, Plaintiffs and the Class Members are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Those damages are: (a) the difference between the values of the Ranges as represented (their prices) paid and their actual values at the time of purchase ($0.00), or (b) the cost to repair or replace the Ranges, and (c) other miscellaneous incidental and consequential damages.

46

158.   In addition, given the nature of Whirlpool's conduct, Plaintiffs and the Class Members are entitled to all available statutory, exemplary, treble, and/or punitive damages and attorneys' fees based on the amount of time reasonably expended and equitable relief necessary or proper to protect them from Whirlpool's unlawful conduct.

## Count III
### *Fraud by Omission*
**(On behalf of the Nationwide Classes or, in the Alternative, all Subclasses)**

159.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein

160.   Plaintiffs bring this claim individually and on behalf of the Nationwide Class or, in the alternative, on behalf of all Subclasses under those state's respective laws.

161.   Whirlpool made material omissions concerning a presently existing or past fact in violation of substantially identical common law.  Whirlpool did not fully and truthfully disclose to its customers the true nature of the Defect.  A reasonable consumer would not have expected the Defect in a new Range and especially not a Defect that rendered the range unsafe and unusable for ordinary purposes.

162.   Whirlpool omitted to disclose the Defect with the intent that Plaintiffs and Class Members rely upon the omission.

163.  The facts concealed, suppressed, and not disclosed by Whirlpool to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Ranges, or to pay a lesser price.

164.  Whirlpool had a duty to disclose the true quality, and safety risks of the Ranges because the knowledge of the Defect and its details were known and/or accessible only to Whirlpool, Whirlpool had superior knowledge and access to the relevant facts, and Whirlpool knew the facts were not known to, or reasonably discoverable by, Plaintiffs and Class Members.  Whirlpool also had a duty to disclose because it made many partial representations about the qualities and reliability of its ranges, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual unsafe design of their ranges.

165.  Had Plaintiffs and the Class known about the defective nature of the Ranges, they would not have purchased the Ranges or would have paid less.

166.  Plaintiffs and Class Members reasonably relied to their detriment upon Whirlpool's material omissions and suffered damages as a result.

167.  Whirlpool's conduct was willful, wanton, oppressive, reprehensible, and malicious.  Consequently, based upon all the facts as alleged herein, Plaintiffs and Class Members are entitled to an award of punitive damages.

**Count IV**
***Violations of the New Hampshire Consumer Protection Act***
**N.H. Rev. Stat. § 358-A:1 *et seq.***
**(On behalf of the New Hampshire Subclass)**

168.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

169.   Plaintiff Tapply brings this claim under the laws of New Hampshire, individually and on behalf of the New Hampshire Subclass.

170.   Plaintiff, the New Hampshire Subclass Members, and Defendant are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA") 183. N.H. Rev. Stat. § 358-A:1.

171.   Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

172.   The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but . . . not limited to, the following: . . .  (V) Representing that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have," "(VII) Representing that goods or services are of a particular standard, quality, or grade, . . . if they are of another," and "(IX) Advertising goods or services with intent not to sell them as advertised."  N.H. Rev. Stat. § 358-A:2.

173.   In the course of its business, Whirlpool concealed and suppressed material facts concerning the Ranges. Whirlpool failed to disclose the Defect. Whirlpool also

engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Ranges.

174.   Whirlpool owed Plaintiff and the New Hampshire Subclass a duty to disclose the true nature of the Ranges because Defendant: (a) possessed exclusive knowledge about the Defect; (b) intentionally concealed the foregoing from Plaintiff and the New Hampshire Subclass; and (c) made incomplete representations about the Ranges, while purposefully withholding material facts from Plaintiff and the New Hampshire Subclass that contradicted these representations.

175.   Whirlpool knew about the Defect at time of sale. Whirlpool acquired additional information concerning the Defect after the Ranges were sold but continued to conceal information.

176.   Whirlpool thus violated the New Hampshire CPA by, at a minimum, employing deception, deceptive acts or practices, fraud, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Ranges.

177.   Whirlpool intentionally and knowingly misrepresented material facts regarding the Ranges with intent mislead Plaintiff and the New Hampshire Subclass members.

178.   Whirlpool knew or should have known that its conduct violated the New Hampshire CPA.

179.   Whirlpool's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff.

180.   Plaintiff and the New Hampshire Subclass suffered ascertainable loss and actual damages as a direct and proximate result of Whirlpool's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the New Hampshire Subclass members who purchased the Ranges would not have purchased them or would have paid significantly less if the Defect had been disclosed.

181.   Whirlpool had an ongoing duty to Plaintiff and the New Hampshire Subclass to refrain from unfair and deceptive practices under the New Hampshire CPA. All owners of the Ranges suffered ascertainable loss in the form of the diminished value of their Ranges as a result of Whirlpool's deceptive and unfair acts and practices made in the course of Whirlpool's business.

182.   Whirlpool's violations present a continuing risk to Plaintiff, the New Hampshire Subclass, and the general public. Whirlpool's unlawful acts and practices complained of herein affect the public interest.

183.   As a direct and proximate result of Whirlpool's violations of the New Hampshire CPA, Plaintiff and the New Hampshire Subclass have suffered injury-in-fact and/or actual damage.

184.   Because Whirlpool's willful conduct caused injury to Plaintiff and the New Hampshire Subclass members' property through violations of the New Hampshire CPA, Plaintiff and the New Hampshire Subclass seek recovery of actual damages, determined by (a) the difference between the values of the Range as represented (their prices paid) and their actual values at the time of purchase, or (b) the cost to correct the Defect in the Ranges, and (c) other miscellaneous incidental and consequential damages, or $1,000 each, whichever is greater, treble damages, costs, and reasonable attorneys' fees, an order enjoining Whirlpool's unfair and/or deceptive acts and practices, and any other just and proper relief under N.H. Rev. Stat. § 358-A:10.

## COUNT V
### *Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act*
### 815 Ill. Comp. Stat. Ann. § 505/1, *et seq.*
### (On Behalf of the Illinois Subclass)

185.   Plaintiff Meyerholz incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

186.   Plaintiff brings this claim under the laws of Illinois, individually and on behalf of the Illinois Subclass.

187.   The Illinois Consumer Fraud and Deceptive Business Practices Act was created to protect Illinois consumers from deceptive and unfair business practices.

188.   Whirlpool's conduct described herein constitutes use or employment of deception, false promise, misrepresentation, unfair practice and the concealment, suppression, and omission of material facts in connection with the sale and

52

advertisement of merchandise, the Ranges, in trade or commerce in Illinois, with the intention that Plaintiff and Illinois Subclass members would rely on such conduct in deciding to purchase the Ranges, making it unlawful under 815 Ill. Comp. Stat. Ann. §505/1, *et seq.*

189. Plaintiff and the Illinois Subclass members relied on the material representations made by Whirlpool and purchased the Ranges for personal purposes and suffered ascertainable losses of money or property as the result of the use or employment of a method, act or practice declared unlawful by 815 Ill. Comp. Stat. Ann. §505/1, et seq. Plaintiff and the Illinois Subclass members acted as reasonable consumers would have acted under the circumstances, and Whirlpool's unlawful conduct would cause reasonable persons to enter into the transactions (purchasing the Ranges) that resulted in the damages.

190. Accordingly, pursuant to 815 Ill. Comp. Stat. Ann. §505/1, *et seq.*, Plaintiff and Illinois Subclass members are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Those damages are: (a) the difference between the values of the Ranges as represented (their prices) paid and their actual values at the time of purchase ($0.00), or (b) the cost to repair or replace the Ranges, and (c) other miscellaneous incidental and consequential damages.

191.  In addition, given the nature of Whirlpool's conduct, Plaintiff and the Illinois Subclass members are entitled to all available statutory, exemplary, treble, and/or punitive damages and attorneys' fees based on the amount of time reasonably expended and equitable relief necessary or proper to protect them from Whirlpool's unlawful conduct.

### COUNT VI
### *Violation of the Oklahoma Consumer Protection Act*
### 5 Okla. Stat. Ann. §§ 751, et seq. ("OCPA")
### (On Behalf of the Oklahoma Subclass)

192.  Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

193.  Plaintiff Buschman brings this claim under the laws of Oklahoma, individually and on behalf of the Oklahoma Subclass.

194.  The Oklahoma Consumer Protection Act ("OCPA") was created to protect Oklahoma consumers from unfair methods of competition and unfair or deceptive business practices.

195.  Whirlpool has knowingly engaged in deceptive, unconscionable, unlawful, unfair, immoral, unethical, oppressive, unscrupulous, fraudulent and misleading commercial practices, including misleading omissions of material fact, in connection with the marketing, promotion and sale of the Ranges misrepresenting their safety and failing to disclose the dangers caused by the Defect.

196.   Plaintiff and the Oklahoma Subclass members purchased the Ranges for personal purposes and suffered ascertainable losses of money or property as the result of the use or employment of a method, act or practice declared unlawful by 15 Okla. Stat. Ann. §§ 752 (13), Plaintiff and the Oklahoma Subclass members acted as reasonable consumers would have acted under the circumstances, and Whirlpool's unlawful conduct would cause reasonable persons to enter into the transactions (purchasing the Ranges) that resulted in the damages.

197.   Accordingly, pursuant to the aforementioned statutes, Plaintiff and the Oklahoma Subclass members are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Those damages are: (a) the difference between the values of the Ranges as represented (their prices) paid and their actual values at the time of purchase ($0.00), or (b) the cost to repair or replace the Ranges, and (c) other miscellaneous incidental and consequential damages.

198.   In addition, given the nature of Whirlpool's conduct, Plaintiff and the Oklahoma Subclass members are entitled to recover all available statutory, exemplary, treble, and/or punitive damages, costs of suit, and attorneys' fees based on the amount of time reasonable expended and equitable relief necessary, and all such other relief as the Court deems proper.

## COUNT VII
### *Violation of the Nevada Deceptive Trade Practices Act*
### Nev. Rev. Stat. §598.0999, et seq
### (On Behalf of Nevada Subclass)

199.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

200.   Plaintiff Partipilo brings this claim under the laws of Nevada, individually and on behalf of the Nevada Subclass.

201.   The Nevada Deceptive Trade Practices Act was created to protect Nevada consumers from deceptive and unfair business practices.

202.   Whirlpool's conduct described herein constitutes the knowing and willing act, use or employment of deception, false promise, misrepresentation, unfair practice and the concealment, suppression, and omission of material facts in connection with the advertisement and sale of merchandise, the Ranges, in trade or commerce in Nevada, making it unlawful under Nev. Rev. Stat. §598.0999, *et seq.*

203.   Plaintiff and the Nevada Subclass members the representations made by Whirlpool purchased the Ranges for personal purposes and suffered ascertainable losses of money or property as the result of the use or employment of a method, act or practice declared unlawful by Nev. Rev. Stat. §598.0999*, et seq.*

204.   Plaintiff and the Nevada Subclass members acted as reasonable consumers would have acted under the circumstances, and Whirlpool's unlawful

conduct would cause reasonable persons to enter into the transactions (purchasing the Ranges) that resulted in the damages.

205. Accordingly, pursuant to under Nev. Rev. Stat. §598.0999, *et seq.*, Plaintiff and the Nevada Subclass members are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Those damages are: (a) the difference between the values of the Ranges represented (their prices) paid and their actual values at the time of purchase ($0.00), or (b) the cost to repair or replace the Ranges, and (c) other miscellaneous incidental and consequential damages.

206. In addition, given the nature of Whirlpool's conduct, Plaintiff and Nevada Subclass members are entitled to all available statutory, exemplary, treble, and/or punitive damages and attorneys' fees based on the amount of time reasonably expended and equitable relief necessary or proper to protect them from Whirlpool's unlawful conduct.

### Count VIII
### *Breach of Express Warranty*
### (On Behalf of the Nationwide Classes or, in the Alternative, all Subclasses)

207. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

208. Plaintiffs bring this Count on behalf of themselves, on behalf of the Nationwide Classes, and on behalf of all Subclasses.

209. In connection with the purchase of each Range, Defendant Whirlpool provides an express warranty ("Warranty"), pursuant to which for a period of one year Whirlpool will pay for Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product.

210. In addition to the written warranties Whirlpool issued, Whirlpool expressly warranted several attributes, characteristics, and qualities, as set forth above.

211. Furthermore, the Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Defendant Whirlpool has failed and/or refused to adequately provide the promised remedies.

212. Whirlpool has breached its warranty and refused to provide appropriate warranty relief notwithstanding the risks of using the Ranges. Plaintiffs and the Class reasonably expected, at the time of purchase, that the Ranges were safe for their ordinary and intended use.

213. To the extent privity may be required, Plaintiffs and the Class can establish privity with Whirlpool or alternatively, Plaintiffs can establish that they fall into an exception to a privity requirement. Plaintiffs and the Class relied on Whirlpool's warranties and dealt directly with Whirlpool through the exchange of warranty and recall information.

214.   Alternatively, Plaintiffs and the Class were foreseeable third-party beneficiaries of Whirlpool's sale of the Ranges.

215.   Moreover, many of the damages flowing from the Ranges cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Whirlpool's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the Class's remedies would be insufficient.

216.   Whirlpool has been provided notice of these issues by numerous complaints as described herein.

217.   Plaintiffs and the Class are not required to give notice to Whirlpool, a remote manufacturer, and Whirlpool has had notice of the type and source of claims in this matter for a sufficient amount of time.

218.   As a direct and proximate result of Whirlpool's breach of express warranties, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## Count IX
### *Breach of the Implied Warranty of Merchantability*
### **(On Behalf of the Nationwide Classes or, in the Alternative, all Subclasses)**

219.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

220.   By operation of law, Whirlpool as the manufacturer of the Ranges and as the provider of a limited warranty for the Ranges, impliedly warranted to Plaintiffs and the Class that the Ranges were of merchantable quality and safe for their ordinary and intended use.

221.   Such implied warranty of merchantability, contained in U.C.C. § 2-314, has been codified in each Subclass state. *See, e.g.,* Ill. Comp. Stat. Ann. Ch. 810, 5/2-314, *et seq.*; Mich. Comp. Laws Ann. §§ 440.2314, *et seq.*; Nev. Rev. Stat. §§ 104.2314, *et seq.*; N.H. Rev. Stat. Ann. §§ 382-A:2-314, *et seq.*; and Okla. Stat. tit. 12A, §§ 2-314, *et seq.*

222.   Whirlpool breached the implied warranty of merchantability in connection with the sale and distribution of the Ranges. At the point of sale, the Ranges, while appearing normal, contained latent defects as set forth herein rendering them unsuitable and unsafe for personal use.

223.   Whirlpool breached the implied warranty of merchantability in connection with the sale and distribution of the Ranges. At the point of sale, the Ranges, while appearing normal, contained latent defects as set forth here rendering them unsuitable and unsafe for personal use.

224.   Had Plaintiffs and the Class known the Ranges were unsafe for use, they would not have purchased or leased them.

225.   To the extent privity may be required, Plaintiffs and the Class can establish privity with Whirlpool or alternatively, Plaintiffs can establish that they fall into an exception to a privity requirement. Plaintiffs and the Class relied on Whirlpool's warranties and dealt directly with Whirlpool through the exchange of warranty and recall information.

226.   Alternatively, Plaintiffs and the Class were foreseeable third-party beneficiaries of Whirlpool's sale of the Ranges.

227.   Plaintiffs are not required to give notice to Whirlpool, a remote manufacturer, and Whirlpool has had notice of the type and source of claims in this matter for several years.  Specifically, Defendant was provided notice of these issues by consumer complaints submitted to the CPSC which the CPSC transmitted to Whirlpool, complaints submitted by consumers to the Whirlpool website and to other consumer websites, and complaints filed against it including the instant Complaint, and by communications sent by consumers.

228.   Whirlpool has refused to provide appropriate warranty relief notwithstanding the risks of using the Ranges. Plaintiffs and the Class reasonably expected, at the time of purchase, that the Ranges were safe for their ordinary and intended use.

229. As a direct and proximate result of Whirlpool's breach of the implied warranty of merchantability, Plaintiffs and the Class have sustained damages in an amount to be determined at trial.

## Count X
### *Unjust Enrichment (In the Alternative)*
### **(On Behalf of the Nationwide Classes, or in the alternative, on behalf of all Subclasses)**

230. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

231. Plaintiffs and the Class members conferred a tangible and material economic benefit upon Whirlpool by purchasing the defective Ranges.

232. Whirlpool received proceeds from its intentional sale of defective Ranges with defective control knobs, which were purchased by Plaintiff and Class Members for an amount far greater than the reasonable value of the defective Ranges.

233. In exchange for the purchase price paid by Plaintiff and Class Members, Whirlpool provided defective Ranges that are likely to pose a material risk of fire or injury within their useful lives. This Defect renders the Ranges unfit, and indeed, unsafe for their intended use.

234. Plaintiffs and the Class Members reasonably believed that the Ranges would function as advertised and warranted, and did not know, nor could have known, that the Ranges contained Defects at the time of purchase.

235.   Whirlpool received and is aware of the benefit conferred by Plaintiffs and the Class Members and has retained that benefit despite its knowledge that the benefit is unjust.

236.   Under the circumstances, permitting Whirlpool to retain the proceeds and profits from the sales of the defective Ranges would be unjust. Therefore, Whirlpool should be required to disgorge the unjust enrichment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the above defined Classes, by and through counsel, pray the Court grant the following relief:

A.   An Order certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.   An Order appointing all Plaintiffs as representatives for the Nationwide Classes and each Plaintiff as representative for the Class of his or her state of residence, and appointing their counsel as lead counsel for the Class;

C.   An order awarding Plaintiffs and all other Class Members damages in an amount to be determined at trial for the wrongful acts of Whirlpool;

D.   A Declaration that the Ranges are defective and pose a serious safety risk to consumers and the public;

E.   An Order enjoining Whirlpool, its agents, successors, employees, and other representatives from engaging in or continuing to engage in the manufacture, marketing, and sale of the defective Ranges; requiring Whirlpool to issue corrective actions including notification, recall, service bulletins, and fully-covered replacement parts and labor, or replacement of the Ranges; and requiring Whirlpool to preserve all evidence relevant to this lawsuit and notify Range owners with whom it comes in contact of the pendency of this and related litigation;

F.      Nominal damages as authorized by law;

G.     Restitution as authorized by law;

H.     Punitive damages as authorized by law;

I.      Payment to the Class of all damages associated with the replacement of the defective products and parts, in an amount to be proven at trial;

J.      An order awarding attorney's fees pursuant to applicable Federal and State law;

K.     Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

L.      Any and all other and further relief as this Court deems just, equitable, or proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all counts so triable.

Dated: November 14, 2022       Respectfully submitted,

                                    <u>/s/ David H. Fink</u>
                                    David H. Fink (P28235)
                                    Nathan J. Fink (P75185)
                                    FINK BRESSACK
                                    38500 Woodward Ave, Suite 350
                                    Bloomfield Hills, MI 48304
                                    Telephone: (248) 971-2500
                                    dfink@finkbressack.com
                                    nfink@finkbressack.com

Alan M. Feldman
Edward S. Goldis
Zachary Arbitman
FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
T: (215) 567-8300
F: (215) 567-8333
afeldman@feldmanshepherd.com
egoldis@feldmanshepherd.com
zarbitman@feldmanshepherd.com

Michael F. Ram*
Marie N. Appel*
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
mram@forthepeople.com
mappel@forthepeople.com

*Attorneys for Plaintiffs and the Class*

*\*application for admission forthcoming*