UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JODI TAPPLY, et al.,

     Plaintiffs,

                                    Case No. 1:22-cv-758

v.

                                      HON. JANE M. BECKERING

WHIRLPOOL CORPORATION,

     Defendant.

_____/

## OPINION AND ORDER

Pending before the Court in this putative class action is Defendant Whirlpool Corporation's Motion to Dismiss (ECF No. 17), seeking dismissal of Plaintiffs' Amended Class Action Complaint (ECF No. 13).  Plaintiffs allege that the oven/stove appliances they purchased from Defendant are defective, and they assert a federal breach of warranty claim, and several state-law based claims.  For the reasons that follow, the Court denies Defendant's motion as to its standing argument and grants the motion on all other grounds.  Specifically, the Court holds that while Plaintiffs have standing to bring their claims, their claims are properly dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## I.  BACKGROUND

### A.  Factual Background

Plaintiffs Jodi Tapply, Jeannette Buschman, Michael Partipilo, Barbara Lester, and Vicki Meyerholz bring this action arising from their purchase of certain Whirlpool oven/stove ranges, "including those sold under the Whirlpool, Maytag, KitchenAid, JennAir, Amana, Roper, Admiral, Affresh, and Gladiator brand names (the 'Ranges')" (Am. Compl. [ECF No. 13] ¶ 1).  The Ranges

allegedly include a dangerous design or manufacture defect, specifically, "front-mounted burner control knobs that make the Ranges susceptible to unintentional actuation (the 'Defect')" (*id.*).

Each of the named Plaintiffs are consumers who have purchased a domestic appliance with the alleged Defect from Defendant Whirlpool (Am. Compl. ¶¶ 12–16, 21–66).  Defendant Whirlpool manufactures, produces, distributes, markets, and sells consumer appliances throughout the United States, both directly and through its network of authorized dealers (*id.* ¶¶ 17–20). Plaintiffs allege that Whirlpool has been aware of the Defect "[s]ince at least 2017" through online product reviews and numerous incident reports filed by consumers with the U.S. Consumer Product Safety Commission (CPSC) (*id.* ¶ 6).

**1.      Purchase of Appliances and Discovery of the Defect**

Plaintiffs each purchased a Range with front-mounted burner knobs and noticed the Defect shortly thereafter:

(1)    **Tapply:**  "On or about August 5, 2021," Tapply purchased a "new Whirlpool Range Model Number WGG745S0FS from Home Depot—an authorized Whirlpool reseller—in Keene, New Hampshire for approximately **$1,529.00**" (Am. Compl. ¶ 21).  Shortly after the Range was delivered on September 1, 2021, Tapply noticed the Defect (*id.* 26);

(2)    **Buschman:**  "[O]n or about September 11, 2019," Buschman purchased "a new Whirlpool Range Model Number WFG550S0HZ from Lowe's— an authorized Whirlpool reseller—in Muskogee, Oklahoma for approximately **$699.00** after discount" (*id.* ¶ 29).  Buschman noticed the Defect around December 2019 or January 2020 (*id.* ¶ 36);

(3)    **Partipilo:**  Partipilo purchased a new home and several appliances "[o]n or about April 19, 2019," which included "a new Whirlpool Range Model Number WGG745S0FS" for an undisclosed purchase amount (*id.* ¶ 42). Partipilo noticed the Defect "immediately … upon installation" (*id.* ¶ 45);

(4)    **Meyerholz:**  "In late 2020," Meyerholz purchased "a new KitchenAid Range Model Number KSDB900ESS from Effingham Appliance—an authorized Whirlpool reseller—in Effingham, Illinois for approximately **$2,725.34**" (*id.* ¶ 49).  Meyerholz noticed the Defect "[w]ithin a week or two" of the Range's installation on March 22, 2021 (*id.* ¶¶ 53, 55); and

(5) **Lester:**  Lester "purchased a new Whirlpool Range Model Number WFG320M0BW from Home Depot … in Wyoming, Michigan for approximately **$519.10**" on or about November 25, 2018 (*id.* ¶ 58).  Lester noticed the Defect  "[w]ithin a few months" of the Range's installation on or around December 3, 2018 (*id.* ¶ 62).

Each of the Plaintiffs allege that their Range emitted gas fumes and they realized that the Ranges had been unintentionally actuated, for example, with "the slightest touch, bump, or brush" (*see* Am. Compl. ¶¶ 26–27, 34–39, 45–47, 53–56, 62–65).  Plaintiffs allege that they are "now more cautious around the Range," "pay particular attention to the Range[,]" or "constantly check[]" the Ranges and knobs for unintentional actuation, but each continue to use the Ranges (*id.* at ¶¶ 27, 38, 47).  Plaintiffs Tapply, Buschman, Meyerholz, and Lester allege that they reviewed Whirlpool marketing materials before purchasing the Range and "would not have purchased [the] Range" if it was not covered by Whirlpool's one-year warranty (*id.* ¶¶ 22–23, 30–31, 50–51, 59–60).

## 2.     The Defect

Plaintiffs allege that "consumers would not anticipate that inadvertent contact with a Range's burner controls—while cooking or performing other activities in its proximity, or by pets or children—will actuate the Range" (Am. Compl. ¶ 70).  Plaintiffs allege that each burner control knob actuates the Range "through a single smooth motion—a push motion with a twist—requiring minimal force and distance" (*id.* ¶ 71).  Plaintiffs further state that the process of turning on the Range "should and is intended to be the result of two separate and distinct purposeful actions: a first action (pushing the control knob in), followed by a second action (rotating the knob to the desired heating level)" as described in the relevant user manuals for the Ranges (Am. Compl. ¶¶ 72–73).  This, according to Plaintiffs, renders "the Ranges hazardous and unsafe for normal and expected use" and "impede the central function of the Ranges …: safe cooking" (*id.* ¶¶ 4–5, 75–77).  Plaintiffs further allege that the Ranges are defective at the point of sale because consumers

could not reasonably know about the defect at the point of sale and could not discover the defect with a reasonable investigation at the time of purchase or delivery (Am. Compl. ¶ 78).

3.      **Whirlpool's Alleged Knowledge of the Defect**

Plaintiffs allege that, at all relevant times, "Whirlpool knew that the Ranges it marketed and sold were prone to unintentional actuation, and, therefore, that the Ranges were inherently defective, unmerchantable, and unfit for their intended use" (Am. Compl. ¶ 79).  Plaintiffs reference numerous incident reports about the Defect submitted to the CPSC, including reports sent from 2017 through 2020 regarding several of the Range Model Numbers at issue in this action (*see id.* ¶¶ 80–88).  The reports detail the accidental actuation of the burners, emission of gas, and scent of gas fumes (*see id.*).

Plaintiffs also reference complaints submitted directly to Whirlpool, Maytag, and KitchenAid via consumer reviews posted to their websites, ranging from 6 months to 4 years ago (2018 to approximately May 2022) regarding several of the Range Model Numbers at issue in this action (*see* Am. Compl. ¶¶ 80–100).  The reviews detail the accidental actuation of the burners and the emission of gas and scent of gas fumes (*see id.*).

Last, Plaintiffs allege that "certified Whirlpool appliance technicians have observed unintentional actuation in Ranges in the field" (Am. Compl. ¶ 101).

4.      **Whirlpool's Allegedly Deficient Warranty Service**

According to Plaintiffs, Whirlpool "provided a uniform, express one-year factory warranty against manufacturing defects in materials and workmanship" that was included in the user manuals for the model Ranges purchased by Plaintiffs (Am. Compl. ¶ 102).  Plaintiffs allege that Whirlpool "routinely denies warranty claims arising from the Defect" (*id.* ¶ 103).  Plaintiffs further

4

allege that Whirlpool marketed, advertised, and warranted that the Ranges "were of merchantable quality and fit for their intended purpose" and "free from defects and did not pose an unreasonable risk to persons or property" (*id.* ¶ 104).  Last, Plaintiffs allege that Whirlpool has failed to implement an effective remedy for consumers at risk because of the Defect and has failed to provide effective repairs (*id.* ¶ 106).

**5.     Alleged Risk of Injury and Imminent Harm**

Plaintiffs state that they "paid far more than the reasonable value of the Range, and would have paid substantially less, or not have purchased a Range at all, and/or would have removed the Ranges from their homes," had Whirlpool adequately disclosed the Defect (Am. Compl. ¶¶ 108, 111).  Further, Plaintiffs claim that Whirlpool profits and continues to profit from the sale of defective Ranges "by failing to disclose the above-described Defect and continuing to sell Ranges at prices well above their reasonable value" (*id.* ¶ 109).

## B.  Procedural Posture

Plaintiffs initiated this action on August 19, 2022 (ECF No. 1).  On November 14, 2022, Plaintiffs filed an Amended Complaint (ECF No. 13).  Plaintiffs assert a single federal claim under the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301 (Count I), as well as nine claims arising under state-law, including:  fraud by omission (Count III); breach of express warranty (Count VIII); breach of implied warranty (Count IX); and unjust enrichment (Count X).[1]

---

[1] Plaintiffs' five state-law consumer protection claims are brought under the Michigan Consumer Protection Act (MCPA), MICH. COMP. LAWS. § 445.901, *et seq.* (Count II); New Hampshire Consumer Protection Act (NHCPA), N.H. Rev. Stat. § 358-A:1 *et seq.* (Count IV); Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. Ann. § 505/1, *et seq.* (Count V); Oklahoma Consumer Protection Act (OCPA), 5 Okla. Stat. Ann. §§ 751, *et seq.* (Count VI); and the Nevada Deceptive Trade Practices Act (NDTPA), Nev. Rev. Stat. § 598.0999, *et seq.* (Count VII).

On December 20, 2022, Defendant filed a Motion to Dismiss (ECF No. 17).  The parties stipulated to extensions of time, and on February 23, 2023, Plaintiffs filed a response in opposition (ECF No. 27), and on March 16, 2023, Defendant filed a reply (ECF No. 32).  Further, on May 26, 2023 Defendant filed a Notice of Supplemental Authority (ECF No. 38), to which Plaintiffs filed a response (ECF No. 39).

Having considered the parties' submissions, the Court concludes that oral argument is not necessary to resolve the issues presented.  *See* W.D. Mich. LCivR 7.2(d).

## II.  MOTION STANDARDS

### A.    Rule 12 Dismissal Standards

Defendant's motion to dismiss is filed pursuant to Federal Rule of Civil Procedure 12(b)(1) (lack of subject-matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted).  Whether a party has standing is an issue of the court's subject-matter jurisdiction under Rule 12(b)(1), *State by & through Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 506–07 (6th Cir. 2019), and "[t]he party invoking federal jurisdiction bears the burden of establishing the [standing] elements," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Where a defendant challenges the facial sufficiency of the pleading, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party."  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

Rule 12(b)(6) authorizes a court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]"  FED. R. CIV. P. 12(b)(6).  Specifically, a complaint must present "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007).  The court views the complaint in the light most favorable to the plaintiff, accepting as true all well-pled factual allegations and drawing all reasonable inferences

6

in favor of the plaintiff.  *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although an assessment of "the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings," the Court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment."  *Gavitt*, 835 F.3d at 640.

**B.    Rule 9**

A party "alleging fraud" must "state with particularity the circumstances constituting fraud."  FED. R. CIV. P. 9(b).  "At a broad level, Rule 9(b) requires that the plaintiff specify the who, what, when, where, and how of the alleged fraud."  *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 410–11 (6th Cir. 2022) (internal quotations and quotation marks omitted).  A claim for fraudulent misrepresentation generally requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Id.* (citations omitted).  Applicable here, "[s]imilar elements are necessary for fraudulent concealment, which also requires the actual concealment of a material fact and knowledge of the fact concealed."  *Joseph v. Joseph*, No. 19-3350, 2022 WL 3536273, at *5 (6th Cir. Aug. 18, 2022) (unpublished) (citations omitted); *see also Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 873 (E.D. Mich. 2019) ("Even in the context of a fraudulent omission claim, Rule 9(b) requires a plaintiff to set forth the 'who, what, when, where, and how' of the alleged

omission.") (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012)).

**C.     Rule 12(f)**

Last, Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  The Sixth Circuit has cautioned that "motions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015).  The function of the motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with" them early in the case.  *Id.* (citation omitted).

### III.  ANALYSIS

**A.     Article III Standing**

Federal judicial powers are constrained by Article III of the United States Constitution to allow courts to resolve only "cases" and "controversies."  *See TransUnion LLC v. Ramirez*, ___ U.S. ___, 141 S. Ct. 2190, 2203 (2021).  "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing."  *Id.* (quotation omitted); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (Article III's standing requirement is an "irreducible constitutional minimum").  Article III standing is a matter of subject matter jurisdiction, consisting of three elements:  "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also TransUnion LLC*, *supra*.

Defendant argues that Plaintiffs' lack of standing prevents this Court from exercising jurisdiction over the subject matter of Plaintiffs' claims.  Without subject-matter jurisdiction, this Court lacks power to either consider the merits of Plaintiffs' claims or issue any order.  *See Bell v. Hood*, 327 U.S. 678, 682 (1946); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990); *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1087 (6th Cir. 1992).  If the plaintiff lacks standing, then the court "need not reach" other issues, e.g., "ripeness, statutory preclusion, and failure to state a claim upon which relief can be granted."  *State by & through Tenn. Gen. Assembly*, 931 F.3d at 507; *see also Online Merchants Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021).  Consequently, the Court turns first to analyzing Defendant's Rule 12(b)(1) standing arguments.

### 1.       Standing for All Claims:  Damages/Economic Harm

Defendant argues that Plaintiffs lack standing because they seek to recover "for only economic harms" and "fail to allege any economic harm or damages they suffered as a result of the Defect" (ECF No. 26 at PageID.491).  Defendant asserts that Plaintiffs "do not allege they either bargained for or paid for" a design that prevents the Ranges from being actuated inadvertently (*id.* at PageID.492).

In response, Plaintiffs contend that the "benefit-of-the-bargain damages" they plead are not speculative, as "Plaintiffs suffer[ed] these financial losses at the point of sale, not upon the occurrence of some future harm to their home or person" (ECF No. 27 at PageID.537).  Plaintiffs also argue that the safety feature—"a properly functioning actuation mechanism"—is "reasonably anticipate[d]" by consumers and described as a "two-part mechanism" in the user manuals for the Ranges that "was supposed to prevent the Ranges from actuating inadvertently" (*id.*).

The Court determines that Plaintiffs have alleged sufficient facts to confer standing.

To establish standing, Plaintiffs "must clearly allege facts" demonstrating each element: (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 578 U.S. at 338. An injury in fact is defined as "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (citing *Lujan*, 504 U.S. at 560).

Courts in the Sixth Circuit have held that plaintiffs may establish injury in fact, and thus standing, according to a theory of overpayment. For example, "[w]hen a manufacturer sells a product that is defective, which causes consumers to be misled at the point of sale into paying more and getting less than they believed they were purchasing, the consumers suffer an injury in fact, even if that defect does not manifest itself in every individual unit." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 1382297, at *5 (E.D. Mich. Apr. 18, 2017) (citing *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013)). *See also, e.g., Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 640 (E.D. Mich. 2019) ("'[The p]laintiffs' allegations that they overpaid for the vehicle based on [a manufacturer's] representations constitute economic injury sufficient to establish Article III standing.'") (quoting *Counts v. Gen. Motors, LLC*, 237 F. Supp.3d 572, 583 (E.D. Mich. Feb. 14, 2017)); *Gamboa*, 381 F. Supp. 3d at 886 (same) (citing *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 794; (6th Cir. 2009)).

Here, as in *In re FCA*, "[a]ll of the plaintiffs said that had they known [of the Defect], they would not have purchased the [Ranges], or at least would not have paid as much." *In re FCA*, 2017 WL 1382297, at *5 (citation omitted). As in *In re FCA* and *In re Toyota Motor Corp.*, accepting Plaintiffs' allegations as true, as the Court must at the pleading stage, Plaintiffs' allegations related to their overpayment for a product that is allegedly defective "constitutes the

economic-loss injury that is sufficient to confer standing."  *In re FCA*, 2017 WL 1382297, at *5

(discussing and citing *In re Toyota Motor Corp.*, 790 F. Supp. 2d at 1163).  *See Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 694 (E.D. Mich. 2020) ("The prevailing jurisprudence in this district

… thus holds that a consumer who alleges she would not have purchased a [product] (or would

have paid less for it) had the manufacturer not misrepresented the [product] to customers'

detriment or omitted mention of its significant limitations, has alleged a plausible injury-in-fact.")

(citations omitted).[2]

Further, accepting Plaintiffs' allegations as true, their claims of overpayment based on

Defendant's alleged concealment of the Defect are cognizable injuries that are fairly traceable to

Defendant and redressable by a favorable decision of this Court.  *See, e.g., In re Chevrolet Bolt EV Battery Litig.*, No. 2:20-cv-13256, 2022 WL 4686974, at *14, n. 13 (E.D. Mich. Sept. 30, 2022)

("[A] theory of overpayment at the time they purchased their vehicles … is sufficient to allege an

injury redressable by a favorable decision of th[e c]ourt.")  (citing *Gamboa*, 381 F. Supp. 3d at

886 ("[The p]laintiffs' overpayment theory is sufficient to provide standing to sue Bosch LLC

because of its role in the use and concealment of a cheat device that allegedly constrained the

emissions control system of the vehicles purchased by [the p]laintiffs … they paid for a product

---

[2] Because Plaintiffs allege that the ignition features and front control knobs of the Ranges at issue are not "additional" safety features but are "standard features central to a product's safe operation" (ECF No. 27 at PageID.538), the Court agrees that the cases cited by Defendant are distinguishable to the facts at hand.  As argued by Plaintiffs, in *Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017); *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267 (C.D. Cal. 2016); and *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720 (9th Cir. 2017), the courts rejected the plaintiffs' overpayment theories as not stating an injury in fact sufficient to confer standing because the alleged overpayment for the products concerned additional safety features that were not standard or central features of the products and, therefore, consumers did not bargain for them and could not reasonably have expected the features to be included in the product from either the defendants or the manufacturers.  *See Beck*, *supra* at 746–47; *Lassen*, *supra*, at 1284; *Cahen*, *supra* at 723–24.

that did not operate in the way they believed it did. Claims of overpayment, wherein a plaintiff paid a premium but did not receive the anticipated consideration, are cognizable injuries in fact…. And, financial damages are fully redressable by a favorable decision.")).

In sum, at the pleading stage, Plaintiffs have alleged a theory of overpayment and economic damages sufficient to confer standing.

### 2.    Standing for Claims Related to Electric Cooktop Ranges

Defendant next argues that the Court should "strike the class allegations related to electric ranges" because no named Plaintiff purchased an electric range, and thus Plaintiffs lack standing to pursue claims involving electric ranges (ECF No. 26 at PageID.486) (citing Am. Compl. ¶¶ 2, 69, 77, 120, 123).  Defendant also contends that "Plaintiffs cannot possibly represent" the proposed "Nationwide Electric Class, because no named Plaintiff qualifies as a member of that proposed class" (*id.* at PageID.488).

In response, Plaintiffs argue that their allegations (that Whirlpool Ranges heated by either electric or gas are inadvertently actuated) are sufficient to establish standing at this stage in the litigation and that the Court should "defer consideration of the scope of the proposed class until the class-certification stage" because they "adequately allege material similarity between the faulty knobs" on Whirlpool's electric and gas Ranges (*id.* at PageID.540–541).

Defendant's argument lacks merit.

Again, to establish standing at the pleading stage, Plaintiffs must allege (1) an injury in fact, (2) fairly traceable to the conduct of the defendant, and (3) redressable by a favorable judicial decision.  *Spokeo*, 578 U.S. at 338.  Moreover, the "usual three-part test for standing applies with full force in the class-action context" and "a decision to assert class allegations in a complaint 'adds nothing to the question of standing[.]'"  *Fox v. Saginaw Cnty., Michigan*, 67 F.4th 284, 294

(6th Cir. 2023) (quoting *Simon*, 426 U.S. at 40 n.20) (alteration in original).  In other words, class representatives:

> must allege an individual injury; they cannot piggyback off the injuries "suffered by other, unidentified members of the class[.]" And even when they have incurred an injury, they lack standing to seek class-wide relief that would go beyond remedying that injury. That is, they may not seek relief against different conduct that has harmed other class members even when it is "similar" to the conduct that harmed the representatives.

*Id.* (citations omitted).

In *Fox*, a Fifth Amendment takings clause case, the Sixth Circuit held that the named plaintiff lacked standing to challenge the conduct of 26 counties because "their conduct … did not affect him."  *Id.* at 294.  The Sixth Circuit concluded that Fox was harmed only by the defendant Gratiot County, and to challenge the conduct of the other county defendants, Fox needed to allege that they "injured him 'personally'" and could not "rely on the claim that the other Counties harmed the 'members of the class' that he seeks to represent."  *Id.*  Thus, the Sixth Circuit stated that determining whether named plaintiff representatives have standing at the outset of the litigation is necessary because "jurisdictional issues [as to their standing] precede[s] the merits." *Id.* at 296–97.  To the contrary, "[b]ecause class members are not parties before class certification, … a court need not worry about their standing until it certifies the class …."  *Id.* (citations omitted). *See also id.* at 297–98 (discussing *Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410, 423–24 (6th Cir. 1998), in which the Sixth Circuit held that "whether [a named plaintiff] could represent [class members who participated in different health care plans from the defendant] turned on Rule 23, not standing.").

Thus, pursuant to Sixth Circuit precedent in *Fox* and *Fallick*, the Court need only address whether the named Plaintiffs in this case have standing to bring their claims.  As discussed above, the Court determines that they have adequately alleged standing and Plaintiffs satisfy the

13

"defendant-by-defendant approach" set forth in *Fox*, *supra*, at 297–98.  *See also, e.g., Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 647 (E.D. Mich. 2021) (rejecting the defendant's argument that the plaintiffs "lack[ed] standing to sue on behalf of model-year 2020 vehicle owners because [the p]laintiffs [did] not purchase[] any such vehicles" and stating that the defendant's "challenge is, at bottom, not so much an attack on … standing, but an attack on the scope of [the] proposed class.").

Nonetheless, for the reasons that follow, the Court determines that Plaintiffs' claims are properly dismissed.

**B.      Plaintiffs' Warranty Claims**

**1.      Magnuson-Moss Warranty Act (Count I)**

Defendant argues that Plaintiffs' claims under Count I fail because "they are derivative of failed state law warranty claims"; Plaintiffs did not provide Defendant "a reasonable opportunity to cure the alleged defect"; and because Plaintiffs do not allege an express warranty, and even if they had, such warranty would not fall within the "narrow MMWA definition of a written warranty" (ECF No. 26 at PageID.511).

In response, Plaintiffs argue that their "claims for breaches of express and implied warranties under state law" are properly pleaded and that presenting Defendant "with an opportunity to cure would have been futile" because Defendant "has not offered a remedy that fixes the Defect despite having known about it for many years" (ECF No. 27 at PageID.553–554). Thus, Plaintiffs argue, "[i]t would … be objectively reasonable to conclude that presentment of a Range for repair of the Defect to Whirlpool would be futile" (*id.*).

Defendant's argument has merit.

As a threshold issue, "[t]o state a claim under the MMWA, a plaintiff must present a sustainable claim for breach of warranty.'" *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 575 (6th Cir. 2013) (quotation omitted). "Claims under the [MMWA] 'stand or fall with … express and implied warranty claims under state law.'" *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1017 (E.D. Mich. 2017) (quoting *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) and citing *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1231 (11th Cir. 2016) ("The claims under the [MMWA] are identical to the other warranty claims noted because they are also based on state law."); *Raymo*, 475 F. Supp. 3d at 704 ("[T]he [MMWA] serves only to 'supplement' state-law implied warranties by prohibiting their disclaimer in certain circumstances and providing a federal remedy for their breach.")).

Further, under the MMWA, a plaintiff must also "demonstrate that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." *Kuns*, 543 F. App'x at 575–76 (quoting *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005) (citation omitted)).

In turn, 15 U.S.C. § 2310(e) states that 'no action … may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty … unless the person obligated under the warranty … is afforded a reasonable opportunity to cure such failure to comply.'" *Kuns*, 543 F. App'x at 576 (quoting 15 U.S.C. § 2310(e)).

In *Kuns*, Ford had issued service bulletins indicating that the warranty covered the defect at issue, and the Sixth Circuit concluded that the plaintiff's subjective conclusion that demand would be futile was not warranted because there was "[no] case law indicating that [the MMWA's 'opportunity to cure'] requirement can be waived if a plaintiff subjectively determines that demand

would be futile and does not so much as request the seller to cover the necessary repair." *Kuns*, 543 F. App'x at 576. On the other hand, for example, the Eastern District of Michigan recently distinguished *Kuns*, holding that where "the [d]efendant automaker specifically instructed vehicle owners that, though the warranty covered the defect, no repair was yet possible[,]" the plaintiffs had established objective futility. *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974, at *32.

Here, even assuming that Plaintiffs have stated state-law claims, as discussed below, and that the written one-year limited warranties in the user manuals for the Ranges fall within the MMWA, Plaintiffs' failure to provide an opportunity to cure is fatal to their claim. There is no dispute that none of the Plaintiffs provided Defendant an opportunity to cure the defect. Plaintiffs do not allege that they attempted to return or repair the Ranges, and, in fact, continue to use their Ranges. Further, Plaintiffs have not addressed futility beyond a single conclusory statement that "[a]ffording Whirlpool a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here" (Am. Compl. ¶ 147). Such conclusory allegations are insufficient to state a claim upon which relief can be granted.

Therefore, the Court determines that Plaintiffs have failed to state a claim under the MMWA, and Defendant's motion on this basis is properly granted.

### 2. Breach of Express & Implied Warranty (Counts VIII and IX)

To state a claim for breach of an express warranty, a plaintiff must generally state the following elements: (1) proof of an express warranty, (2) the failure of the product to meet the warranty, and (3) damages caused by the failure. *See Teal v. Argon Med. Devices, Inc.*, 533 F. Supp. 3d 535, 553 (E.D. Mich. 2021); *Oggi Trattoria & Caffee, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 335, 340 (Ill. App. Ct. 2007); *Reed v. Arthrex, Inc.*, No. 3:17-cv-00337, 2017 WL

16

4560140, at *3 (D. Nev. Oct. 11, 2017); *Fassi v. Auto Wholesalers of Hooksett*, 762 A.2d 1034, 1035 (N.H. 2000) (citing N.H. Rev. Stat. § 382-A:2-714).  Michigan, Illinois, Nevada, and New Hampshire have each adopted the Uniform Commercial Code (U.C.C.) provision that a buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  U.C.C. § 2-607(3)(a); MICH. COMP. LAWS. § 440.2607(3)(a); 810 Ill. Comp. Stat. 5/2-607(3)(a); Nev. Rev. Stat. § 104.2607(3)(a); N.H. Rev. Stat. § 382-A:2-607(3)(a).

In turn, to state a claim for breach of the implied warranty of merchantability, plaintiffs must establish:  (1) that the goods were not merchantable at the time of sale, (2) the plaintiff suffered damages proximately caused by the defective nature of the goods, and (3) appropriate notice of breach to the seller.  *Brachel Mktg., LLC v. JJ Nuts, LLC*, No. 21-cv-157, 2022 WL 16842889, at *3 (N.D. Okla. July 14, 2022); *Coran v. Gino Dev., Inc.*, No. 19-cv-1115, 2019 WL 3432409, at *9 (C.D. Ill. July 30, 2019).  *See R & O Const. Co. v. Rox Pro Int'l Grp., Ltd.*, No. 2:09-cv-01749, 2011 WL 6400258, at *2 (D. Nev. Dec. 20, 2011) (addressing merchantability and damages); *Gorman*, 839 N.W.2d at 228–29.

As discussed above and as more fully set forth by Defendant, because Plaintiffs did not provide Whirlpool with reasonable, pre-suit notice of any alleged breach of either the express one-year limited warranty or any implied warranty, as required under Michigan, Illinois, Nevada, and New Hampshire law, they cannot state a claim for breach of express or implied warranty.  *See* ECF No. 26 at PageID.505–507 (Count VIII); *id.* at PageID.507–509 (Count IX); *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 284 (E.D. Mich. 2021) (applying Michigan law and dismissing implied warranty claims for failure to provide pre-suit notice of an alleged breach); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 589–90 (Ill. 1996) (holding, under Illinois law, that "even if a

manufacturer is aware of problems with a particular product line, the notice requirement of section 2–607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer"); *Flores v. Merck & Co.*, No. 3:21-cv-00166, 2022 WL 798374, at *6 (D. Nev. Mar. 16, 2022) (dismissing, under Nevada law, express warranty claim for failure to allege pre-suit notice) (citing Nev. Rev. Stat. § 104.2607(3)(a)); *Herne v. Cooper Indus., Inc.*, No. CIV.04-cv-202, 2005 WL 2671540, at **5–6 (D.N.H. Oct. 19, 2005) (granting judgment as a matter of law under New Hampshire law against implied and express warranty claims for failure to provide reasonable pre-suit notice, rejecting argument that a consumer's filing of a civil complaint can satisfy this notice requirement).

Accordingly, Plaintiffs' express and implied warranty claims are properly dismissed.

**C.    Fraud by Omission (Count III) and State Consumer Protection Statutes (Counts II, IV–VII)**

Plaintiffs also assert claims for fraud by omission and violation of the relevant state consumer protection statutes under Michigan, Illinois, Oklahoma, New Hampshire, and Nevada law, and unjust enrichment. Each of these claims requires Plaintiffs to plausibly allege (1) pre-sale knowledge of the Defect; and (2) a duty to disclose the Defect.

**1.    Whirlpool's Knowledge of the Defect**

Defendant argues that Plaintiffs' fraud and state consumer protection statute claims fail because Plaintiffs cannot establish Defendant's pre-sale knowledge through "alleged reports to the CPSC and online reviews on Whirlpool's website" where there are "no complaints of unintended actuation in electric ranges" or "personal injury or property damage" in either Plaintiffs' Amended Complaint or the cited online reviews (ECF No. 26 at PageID.489–490). Last, Defendant argues that Plaintiffs "wholly ignore" that Defendant provided "express warnings about the possibility of

18

gas leaks and against putting flammable materials on or near the cooktop," in the relevant user manuals (*id.* at PageID.490–491).

In response, Plaintiffs contend that Federal Rule of Civil Procedure 9 "allows Plaintiffs to allege [Defendant's] knowledge generally because it is in [Defendant's] exclusive possession" (ECF No. 27 at PageID.542–543).  Plaintiffs also argue that the CPSC, unlike the National Highway and Traffic Safety Administration (NHTSA), "sends a report of each [consumer complaint] incident to [Defendant] directly[,]" and thus the incident reports have "a direct bearing" on Defendant's pre-sale knowledge (*id.* at PageID.543) (citing Am. Compl. ¶¶ 6, 81–88)).  Last, Plaintiffs assert that Defendant's statements that its Range knobs comply with the Americans with Disabilities Act and American National Standard Institute design and safety requirements for gas appliances "give rise to a reasonable inference" that Defendant "conducted pre-production compliance testing" and knew about the Defect or should have been aware of the Defect pre-sale (*id.* at PageID.543).

Defendant's argument has merit.

"[T]he textbook elements of a fraud action that appear to be reflected in the substantive law of all or almost all jurisdictions" includes "[that] the defendant has knowledge of or a belief in the falsity of the statement by the person making it …."  *Miller v. Gen. Motors*, LLC, No. 17-cv-14032, 2018 WL 2740240, at *11 (E.D. Mich. June 7, 2018) (quoting Wright & Miller, § 1297 Pleading Fraud With Particularity—In General, 5A Fed. Prac. & Proc. Civ. § 1297 (3d ed.) (collecting cases)).  In addition, under Rule 9(b), a plaintiff stating a fraudulent omission claim "must set forth (1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4)

what [defendant] obtained as a consequence of the alleged fraud." *Id.* (citing *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012)).[3]

In addition, fraud claims under the at-issue state laws necessarily require pre-sale knowledge of the defect. *See Roberts v. Saffell*, 760 N.W.2d 715, 720 (Mich. Ct. App. 2008) ("[E]stablishing silent fraud requires more than proving that the seller was aware of and failed to disclose a hidden defect. Instead, … a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive.") (citation omitted); *Ingaharro v. Blanchette*, 440 A.2d 445, 447 (N.H. 1982); *Sutton v. David Stanley Chevrolet, Inc.*, 475 P.3d 847, 853 (Okla. 2020); *Leigh-Pink v. Rio Props., LLC*, 512 P.3d 322, 325-26 (Nev. 2022); *Bauer v. Giannis*, 834 N.E.2d 952, 957-58 (Ill. App. Ct. 2005).

In *Smith v. Gen. Motors LLC*, 988 F.3d 873, 884–85 (6th Cir. 2021), the Sixth Circuit recently rejected substantially similar arguments to Plaintiffs' arguments in this case and held that the plaintiffs failed to adequately allege the defendant's pre-sale knowledge sufficient to survive a motion to dismiss. Specifically, the Sixth Circuit stated:

> Plaintiffs claim that their allegations about GM's pre-release testing, customer complaints made to the [NHTSA] and GM dealers, and increased warranty claims involving GMT900 vehicles support their assertion that GM knew about the safety defect. But taken as a whole with inferences made in Plaintiffs' favor, these factual allegations do not rise above mere speculation and recitation of legal claims. …
>
> … Plaintiffs make no specific allegations about the results of the tests, such as data obtained by GM or documents confirming or suggesting whether the defect became known. And "[j]ust because plaintiffs plead testing and the testing could reveal the safety risks alleged, does not make it plausible GM knew of the existence of these safety risks." … Plaintiffs never asserted how or why testing revealed the dashboard defect or alleged that through "this testing ... GM somehow learned that the cracked dashboard was a risk."

---

[3] A plaintiff must also establish a duty to disclose, as discussed below. *See Miller*, *supra*, at *11 (citing *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 665 (6th Cir. 2013)).

*Id.* at 884.  *See also McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 761 (E.D. Mich. 2019)

("Courts routinely reject generalized allegations about 'testing' and manufacturer 'analyses' made

in support of finding knowledge of a defect.") (citing *Beck v. FCA US LLC*, 273 F. Supp. 3d 735,

753 (E.D. Mich. 2017) (collecting cases)).

 As to the plaintiffs' allegations that online consumer complaints established the

defendant's pre-sale knowledge, the *Smith* court held:

> These complaints came as online posts on car websites, such as
> ChevroletForum.com, and complaints on the NHTSA database about the cracks,
> including 239 NHTSA safety complaints related to the cracked dashboards.
> Plaintiffs reason that because GM monitors online car forums and the NHTSA
> database, it must have learned about the dangerous dashboard defect and still sold
> affected vehicles.
>
> But the existence of these complaints fails to show that GM knew about the safety
> implications of the defect. Indeed, only one customer articulated that the cracked
> dashboard could lead to an unsafe deployment of airbags. And so while the
> complaints might have put GM on notice about the cracked dashboard, they did not
> create knowledge about the safety risk alleged by Plaintiffs. That is especially true
> because the alleged airbag malfunction has never occurred.

*Smith*, *supra*, at 885.  *See also Raymo*, 475 F. Supp. 3d at 708 ("[A]llegations about complaints

consumers made about the defect to the [NHTSA] were found to have no bearing on [the

defendant's] knowledge of the defect.").

 Plaintiffs' attempt to distinguish the NHTSA and CPSC in the instant case is unpersuasive,

as Plaintiffs neither allege facts nor provide information to support the conclusory assertion that

the complaints were sent to Defendant by the CPSC, nor that the complaints contained sufficient

information to put Defendant on notice of the alleged safety implications of the Defect.  As

Defendant argues, "[t]hese no-injury reports are insufficient to plausibly plead pre-sale knowledge

of a dangerous defect or threat to consumer safety" (ECF No. 26 at PageID.490).  *See, e.g., Roe v.

Ford Motor Co.*, No. 2:18-cv-12528, 2019 WL 3564589, at *7 (E.D. Mich. Aug. 6, 2019)

(allegations regarding pre-suit knowledge of defect insufficient where allegedly defective water pump could be found in millions of vehicles, and "it [was] entirely likely that complaints about and repairs of the water pump were awash in a sea of complaints and repairs") (collecting cases); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013) (complaint properly dismissed where alleged "defect" did not affect the operability of the vehicle but rather only caused inconvenience of having to refuel the vehicle more often).

Last, while some of the consumer complaints in this case date back to 2016 or 2017, a large majority of the complaints were all later in time than the date Plaintiffs purchased their respective Ranges. *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974, at *18 ("[I]t is also clear that no claims requiring proof of pre-purchase knowledge can survive if those purchases occurred before [the defendant] had knowledge of th[e] defect—whenever that was.").

Accordingly, Plaintiffs have failed to plausibly allege facts related to Defendant's pre-sale knowledge of the Defect, and the Court grants Defendant's motion to dismiss on this basis.

### 2.    Duty to Disclose

Assuming arguendo that Plaintiffs sufficiently alleged Defendant's pre-sale knowledge, Defendant next argues that Plaintiffs fail to plausibly allege that Defendant had a duty to disclose the Defect to Plaintiffs, as required by each of the at-issue state-law claims asserted by Plaintiffs (ECF No. 26 at PageID.495).

In response, Plaintiffs contend that Defendant "had a duty to disclose the Defect pursuant to Michigan, Oklahoma, and New Hampshire law because it had superior knowledge of the Defect given its Latent nature" and Defendant had a duty to disclose the Ranges' "malfunctioning actuation mechanism under Illinois, Oklahoma, and New Hampshire law because it presents a safety matter material to the customer" (ECF No. 27 at PageID.544).

Defendant's argument has merit.

Under the various state laws at issue, a plaintiff must generally allege a duty to disclose, and that the defendant fraudulently concealed a material fact.  *See, e.g., MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 665–66 (6th Cir. 2013) (finding that, under MCPA, fraud claim requires allegations of "more than non-disclosure; a plaintiff must establish that the defendant had a legal duty" to disclose such as "where inquiries are made by the plaintiff, to which the defendant makes incomplete replies that are truthful in themselves but omit material information"); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996) ("To state a claim for fraudulent omission [under the ICFA], a plaintiff must allege the defendant concealed a material fact which he had a duty to disclose to plaintiff."); *Rodriguez v. Ford Motor Co.*, No. 21 C 2553, 2022 WL 972306, at *5 (N.D. Ill. Mar. 31, 2022) (stating that under ICFA, the concealment must be more than a "mere passive omission of facts during a business transaction" and "must have been done with the intention to deceive under circumstances creating an opportunity and duty to speak") (quotation omitted).

Moreover, both Oklahoma and Illinois require a confidential or fiduciary relationship to establish a duty to disclose.  *See id.*; *Van Zeeland v. Rand McNally*, 532 F. Supp. 3d 557, 572–73 (N.D. Ill. 2021); *Connick*, 675 N.E.2d at 593; *Sutton v. David Stanley Chevrolet, Inc.*, 475 P.3d 847, 854 (Okla. 2020); *Seay v. Weaver*, No. 19-cv-00474, 2021 WL 3686695, at **5–6 (N.D. Okla. July 23, 2021).  Additionally, in New Hampshire, "[a] duty to disclose arises when a seller knows of a concealed defect … provided the defect is dangerous to life or property." *Univ. Sys. of N.H. v. U.S. Gypsum Co.*, 756 F. Supp. 640, 651 (D.N.H. 1991); *Ingaharro*, 440 A.2d at 447 ("[T]he defect must be dangerous to property or life" before a duty to disclose arises).  Last, under Nevada law, "a plaintiff who receives the true value of the goods or services purchased has not suffered

damages under theories of common-law fraudulent concealment or N.R.S. 41.600." *Leigh-Pink*,
512 P.3d at 324.

      As set forth more fully by Defendant, Plaintiffs "make no allegation[s] that they contacted
[Defendant] regarding the Defect, either … at the time of purchase or to report" the alleged Defect
once discovered (ECF No. 26 at PageID.497).  In addition, because Plaintiffs do not allege any
specific facts as to Plaintiffs' respective purchase of the Ranges, or what specifically Defendant
concealed in the relevant marketing materials or user manuals, Plaintiffs have not alleged
concealment of a material fact or an intent to deceive.  And Plaintiffs do not allege that any special
fiduciary relationship exists where, as here, the transactions occurred between a consumer and
authorized dealers of the defendant manufacturer.  *See, e.g., Connick*, 675 N.E.2d at 593
(allegations that plaintiffs purchased a Samurai from an authorized dealer did not allege a
confidential or fiduciary relationship); *Rodriguez*, 2022 WL 972306, at *1 (dismissing fraudulent
omission and ICFA claim after finding that manufacturer had no duty to warn of alleged wiring
defect in vehicles despite allegation of superior knowledge and active concealment, and stating
that "[t]here is no contractual privity between a manufacturer and a person who buys from an
independent dealer") (citing cases).  Thus, Plaintiffs fail to allege sufficient facts that Defendant
had a duty to disclose under any of the at-issue state laws.

      In sum, Plaintiffs' Counts II, III, and IV–VII are properly dismissed as Plaintiffs have failed
to plausibly allege Defendant's pre-sale knowledge of the Defect or a duty to disclose.

**D.**     **Unjust Enrichment Claim (Count X)**

      Last, Defendant argues that Plaintiffs' unjust enrichment claim is properly dismissed
because "existence of a valid, enforceable contract precludes an unjust enrichment claim" (ECF

No. 26 at PageID.509).  In response, Plaintiffs contend that Plaintiffs plead unjust enrichment in the alternative, as allowed under FED. R. CIV. P. 8(a)(3) (ECF No. 27 at PageID.554).

Defendant's argument has merit.

Federal Rule of Civil Procedure 8(a)(3) allows a plaintiff to seek "relief in the alternative." However, as argued by Defendant, "Plaintiffs do not allege that [the one-year limited] warranty is invalid, nor [do they] otherwise disclaim the existence of a valid contract" (ECF No. 26 at PageID.510).  Therefore, recovery under a theory of unjust enrichment is precluded.  *See Camden Nat'l Bank v. Greystone Select Holdings, LLC*, No. 17-cv-272, 2017 WL 5146166, at **4–5 (D.N.H. Nov. 3, 2017) (quoting *Clapp v. Goffstown Sch. Dist.*, 977 A.2d 1021, 1025 (N.H. 2009) (holding "the court ordinarily cannot allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand" and dismissing unjust enrichment claim on that basis); *Lipov v. La.-Pac Corp.*, No. 1:12-cv-439, 2013 WL 3805673, at *6 (W.D. Mich. July 22, 2013) (dismissing unjust enrichment claim because warranty "provides a contractual remedy for Plaintiff"); *Sisemore*, 212 F. Supp. 3d at 1112 (dismissing unjust enrichment claim where complaint alleged a contractual relationship arose from his purchase and "allege[d] no facts supporting his alternative theory that he had a quasicontractual relationship" with the defendant); *Kunio Tsutsumi v. Advanced Power Techs., Inc.*, No. 2:12-cv-01784, 2013 WL 1953716, at *8 (D. Nev. May 10, 2013) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement.").

Accordingly, Plaintiffs' Count X is properly dismissed on this basis.

### III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss (ECF No. 17) is GRANTED in part and DENIED in part.  Specifically, the motion is DENIED as to Defendant's standing argument and GRANTED on all other grounds.  Plaintiffs' Counts I–X are DISMISSED.

Because this Opinion and Order resolves all pending claims, the Court will also enter a Judgment to close this case.  *See* FED. R. CIV. P. 58.

Dated:  June 23, 2023                                          /s/ Jane M. Beckering
                                                              JANE M. BECKERING
                                                              United States District Judge